**BARTO WATSON, INC., Appellant,**

v.

**CITY OF HOUSTON & Bob DeVillier, Appellees.**

No. 01–98–00178–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 1999.

Rehearing Overruled Sept. 3, 1999.

Daryl L. Moore, Elizabeth C. Lazenby, Houston, for appellant.

Jocelyn Yvon Labove, Assistant City Attorney, Laura Anne Coats, Assistant City Attorney, Houston, for appellees.

Panel consists of Justices MIRABAL, NUCHIA, and DUNN.*

## OPINION

D. CAMILLE HUTSON–DUNN, Justice (Retired).

Barto Watson, Inc. (Watson), the appellant here and plaintiff below, appeals the dismissal of its suit for lack of subject matter jurisdiction. We reverse and re-

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

mand to the trial court for further proceedings.

### Factual Background

On September 27, 1993, Watson was operating a sand pit outside of the Houston city limits. Bob DeVillier, an employee of the Houston Department of Public Works and Engineering, claimed Watson had not obtained the proper city permits to run the sand pit. Watson explained to DeVillier that a city permit was not required because the sand pit was outside the Houston city limits. DeVillier ignored Watson's explanations and refused to check the city's records to confirm whether Watson was correct. Instead, DeVillier placed the operation under "red tag" notice and ordered Watson to shut down all operations at the sand pit. Four days later, the City of Houston acknowledged it made a mistake in closing Watson's business because it was indeed located outside the city limits. Watson sued the City and DeVillier to recover $45,282 as damages caused by the shut down.

### Procedural History

Watson amended its original petition four times. The City specially excepted to Watson's second amended petition claiming, among other things, that the petition did not allege a cause of action under the Texas Tort Claims Act, and it did not allege any exception to governmental immunity. Nothing in the record indicates the trial court sustained or otherwise ruled

on the City's special exceptions. Watson immediately filed its third amended petition, but it did not cure the defects claimed by the City.[1]

The City filed a motion to dismiss for lack of subject matter jurisdiction, to which Watson filed a response. A hearing on the motion did not occur until almost eight months after the motion was filed. Watson filed its fourth amended petition on the evening before the hearing. In addition to the previous claims, Watson made a claim for inverse condemnation. The trial court granted the City's motion and dismissed both the City and DeVillier. Watson filed a motion for new trial and for reconsideration, which was overruled by operation of law.

### The Fourth Amended Petition

■ In issues one and two, Watson claims the trial court erred by dismissing its case for lack of jurisdiction because subject matter jurisdiction was apparent from the face of the fourth amended petition, specifically its claim for inverse condemnation.[2] Alternatively, Watson argues that even if subject matter jurisdiction was not apparent from the face of the fourth amended petition, the trial court should have allowed him the opportunity to cure any jurisdictional defects. The City and DeVillier claim the trial court refused to consider Watson's fourth amended petition because it operated as a surprise to them in violation of Texas Rule of Civil Procedure 63.[3] We agree with Watson.

---

1. Watson's second and third amended petitions both alleged that the City and DeVillier's conduct constituted a trespass and negligence, and that they were not entitled to sovereign immunity.

2. Watson's fourth amended petition alleged that (1) the City and DeVillier's conduct constituted a trespass and negligence, and neither was entitled to sovereign immunity because a non-governmental act was involved; (2) the City was not entitled to sovereign immunity because it was attempting to engage in a proprietary act; and (3) the City was guilty of inverse condemnation.

3. Rule 63 states:

 Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a show-

We do not accept the City and DeVillier's claim that the trial court refused to allow Watson's fourth amended petition. Although the City and DeVillier argue that Rule 63 must apply to any dispositive motion, we have not found any case law applying Rule 63 to a motion to dismiss. However, Rule 63 does apply to a summary judgment hearing. *See Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490–91 (Tex.1988). In such a case, if there is no basis in the record to conclude the amended pleading was not considered by the trial court, and there is not a sufficient showing of surprise or prejudice on the part of the opposing party, leave of court to file the amended petition is presumed. *See Goswami,* 751 S.W.2d at 490–91; *Johnson v. Rollen,* 818 S.W.2d 180, 183 (Tex.App.—Houston [1st Dist.] 1991, no writ.) In this case, there is no basis in the record to conclude the amended pleading was *not* considered by the trial court, and there was no showing of surprise or prejudice on the part of the City or DeVillier. Therefore, even if Rule 63 applies to a motion to dismiss, this argument does not help the City or DeVillier because we must presume leave of court. *See Goswami,* 751 S.W.2d at 490–91; *Johnson,* 818 S.W.2d at 183.[4]

### Standard of review

We now consider Watson's fourth amended petition and the trial court's order dismissing it. When reviewing a trial court's order dismissing a cause for want of jurisdiction, we construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). The plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* The factual allegations must be taken as true. *Firemen's Ins. Co. v. Board of Regents U.T. Sys.,* 909 S.W.2d 540, 541 (Tex. App.—Austin 1995, writ denied). If jurisdictional facts are not alleged, a party has a right to amend its pleadings to cure the pleading defect. *Texas Ass'n of Business,* 852 S.W.2d at 446. If a pleading defect is curable by amendment, it should be challenged by special exceptions or by a motion to abate. *Washington v. Fort Bend I.S.D.,* 892 S.W.2d 156, 159 (Tex.App.— Houston [14th Dist.] 1994, writ denied). If and when those special exceptions are heard and granted, and if and when the plaintiff does not adequately amend, then the suit can be properly dismissed. *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 587 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

To recover on an inverse condemnation claim, a property owner must establish that (1) the State or other governmental entity intentionally performed 'certain acts (2) that resulted in the taking, damaging, or destruction of the owner's property (3) for public use. *See Steele v. City of Houston,* 603 S.W.2d 786, 788–92 (Tex. 1980); *Bennett v. Tarrant Co. Water Control & Imp. Dist.,* 894 S.W.2d 441, 448 (Tex.App.—Fort Worth 1995, writ denied). Watson must have alleged that (1) the City intentionally performed certain acts; (2) which resulted in a "taking" of property; (3) for public use. *See Steele,* 603 S.W.2d at 788–92.

Watson's inverse condemnation claim was made in a single paragraph that states:

> Pleading further in the alternative and without waiving any of the above, Plaintiff would show that the City of Houston is guilty of inverse condemnation or destruction or taking of property for public

---

ing that such filing will operate as a surprise to the opposite party.

4. We do not have a transcript of the oral hearing on the motion to dismiss. Watson's motion for new trial and motion to reconsider the trial court's dismissal did not state that the trial court refused to consider the fourth amended petition. The City and DeVillier did not even respond to the motion for new trial and motion to reconsider.

use which subjects the City of Houston to payment to plaintiff.

Watson alleged the following facts to support the allegation:

(1) Watson owned land used for a business in which it hired and contracted with individuals and companies to acquire and transport surface soil.

(2) DeVillier ordered Watson's employees and agents to shut down all operations on September 27, 1993 because he claimed Watson did not have the permits required by the City to run the sand pit.

(3) Despite Watson's insistence that the sand pit was outside the city limits, DeVillier refused to check the City's records to confirm whether the sand pit was within the City's operational jurisdiction.

(4) Watson's business was shut down for four days because of DeVillier's actions.

(5) The City acknowledged DeVillier's mistake by a written letter that confirmed Watson's business was outside the Houston city limits.

 Watson alleged the City was "guilty of inverse condemnation or destruction or taking of property for public use." Watson alleged two of the three elements of an inverse condemnation claim, and omitted the element of an "intentional act." However, the plaintiff's omission of an element of the cause of action does not deprive the court of jurisdiction; it is merely a defect in pleading subject to special exceptions and amendment. *Peek v. Equipment Serv. Co. of San Antonio,* 779 S.W.2d 802, 805 (Tex. 1989). When we construe the pleadings in Watson's favor, we find it is apparent that Watson was making a claim for inverse condemnation.

 Unless it is clear that an amendment will not cure a defective pleading, the trial court may not dismiss a suit until a party has been given an opportunity to amend the pleading. *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 8 (Tex. 1974); *Geochem Lab., Inc. v. Brown & Ruth Lab., Inc.,* 689 S.W.2d 288, 290 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The City argues that Watson's fourth amended petition could not be cured by amendment because the facts do not support a takings case against the City. Therefore, we must determine whether the petition was curable and subject to amendment so that the facts for a takings claim could be alleged.

 The ultimate determination of whether the facts are sufficient to constitute a takings is a question of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 936 (Tex.1998). A taking includes the unreasonable interference with a landowner's right to use and enjoy his property. *See Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992); *A.C. Aukerman Co. v. State,* 902 S.W.2d 576, 578 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Watson's takings claim is based on an unreasonable interference with his right to use and enjoy his property.

 The City attacks Watson's petition as incurable because the facts alleged do not constitute an "intentional act" of the City—that is, it cannot be held liable because DeVillier's act of shutting down the sand pit was not a final act attributable to the City. At best, it argues, the facts alleged show only tortious acts by DeVillier that cannot support a takings claim.[5]

5. We are concerned only with whether DeVillier's act is attributable to the City for a takings claim, not (as the City argues) whether his act amounted to an intentional or negligent act. Watson is not attempting to hold the City liable for a tort—he is making a takings claim. Governmental takings are different by definition. *De Trapani,* 771 S.W.2d at 707. The question of whether DeVillier's act was intentional or negligent is irrelevant to the takings claim. *See id.* (explaining the struggle between respondeat superior liability and blanket immunity for the government in the context of constitutional torts and common law torts).

For the City to be liable, it claims there must be a final decision by the City to effectuate a takings, and here, there was a final decision four days after Watson's actions that allowed Watson to re-open his sand pit. We disagree.

The court in *City of Houston v. De Trapani*, 771 S.W.2d 703, 707 (Tex.App.—Houston [14th Dist.] 1989, writ denied), rejected a similar argument by the City. In *De Trapani*, the City of Houston was sued for erroneously interpreting its own ordinance. *Id.* at 704. After the City enacted new regulations applicable to portable signs, the City's sign administrator gave notice to sign owners of an impending deadline for sign removal. *Id.* The plaintiffs relied on the sign administrator's mistaken reading of the law and unnecessarily removed their billboards. *Id.* The City was found liable for an unconstitutional taking. *Id.*

The court of appeals in *De Trapani* affirmed. 771 S.W.2d at 704. There, the City argued that the city council had the exclusive power to act for the city, and, therefore, the sign administrator's decisions were not attributable to the city. *Id.* at 706. There was a procedure in place by which an aggrieved party could appeal a sign administrator's decision to the city council. *Id.* The court rejected the City's argument, reasoning that there was a taking for which the City was liable.

We are faced with a similar situation. The city inspector DeVillier, who was empowered to act by the City,[6] improperly enforced a permit requirement upon Watson. Like the *De Trapani* case, there was a procedure to appeal the inspector's decision. Accordingly, we hold the inspector's

act is attributable to the City for a takings claim. *See De Trapani*, 771 S.W.2d at 707.

We sustain Watson's issues one and two.[7] We reverse the trial court's judgment and remand for further proceedings.

---

6. Under the City of Houston Building Code, the director of the Public Works and Engineering Department, or his representative, is authorized and directed to enforce all the provisions of the Code. City of Houston Building Code § 104.2.1. Once a stop order issues, the person who is prevented from working by the order has a right to a hearing within three business days. City of Houston Building Code § 104.2.4. Undisputably, the City's Code, adopted by the mayor and the City Council, delegates the enforcement of permit requirements to the Department of Public Works and its inspectors. City of Houston Building Code § 104.2.2.

7. We note that, at oral argument, Watson withdrew its issue three regarding whether Watson had stated a cause of action under the Texas Tort Claims Act. Therefore, we do not consider the argument.