**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

Thomas Ivan KREIPE, Appellee.

No. 14–99–00235–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 5, 2000.

Louis Arthur Beaty, Austin, M. Scott Bresk, Houston, for appellants.

John C. Osborne, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## MAJORITY OPINION ON REHEARING

PAUL C. MURPHY, Chief Justice.

We deny appellant's Motion for Rehearing En Banc filed September 6, 2000, withdraw our Majority Opinion filed August 24, 2000, and substitute this Majority Opinion on Rehearing.

Texas Department of Public Safety appeals from a judgment granted in favor of Thomas Ivan Kreipe in his suit regarding the department's failure to grant a license to carry a concealed handgun. Because Kreipe was convicted of a felony as defined by statute, we reverse the trial court's judgment and render judgment in favor of the department.

### I. Background

In 1970, Kreipe pleaded guilty to the felony offense of possession of marijuana, less than half an ounce, and received five years' deferred adjudication probation. In September 1973, after Kreipe successfully completed the terms of his plea agreement, his indictment was dismissed, and his conviction set aside. More than twenty years later, Kreipe applied for a permit to carry a concealed handgun. The department denied Kreipe's application on grounds that Kreipe had a felony conviction on his record. After the case was heard in Justice of the Peace Court, Precinct 2, Place 1, the court entered an affirmative finding for the department, denying Kreipe's application for issuance of a license. Kreipe appealed the decision to a county court at law for a trial de novo. After hearing testimony, the court by order dated November 30, 1998, rendered a negative finding against the department in favor of Kreipe and ordered the department to process Kreipe's application for issuance of a license to carry a concealed handgun.

### II. Discussion

#### A. Plea to the Jurisdiction

■ Initially, we note that we have jurisdiction to consider this appeal. *See Tune*

*v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358 (Tex.2000).

In the department's first point of error, it complains the trial court erred by denying its plea to the jurisdiction. The department argues that Kreipe failed to comply with the statute's notice requirements in seeking the trial de novo in the county court at law and that this failure deprived the court below of jurisdiction.

The statute allows a party adversely affected by a justice court's ruling to appeal to a county court at law. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 1, 1995 Tex.Gen.Laws 1998, 2003 (repealed 1997).[1] The party appeals by filing, within thirty days after the justice court's ruling, a petition in a county court at law in the county in which the appellant resides. *See id.* The appellant must send, by certified mail, a copy of the appellant's petition, certified by the clerk of the court in which the petition is filed, to the appropriate division of the Department of Public Safety at its Austin headquarters. *See id.*

The department alleges, in its "Plea to the Jurisdiction," that it received an uncertified copy of the petition and that the copy sent by the appellant did not contain a cause number, but bore a "nearly illegible 'received' stamp that did not indicate the entity 'receiving' the document." The department argues that this failure to comply with the statute deprived the court below of jurisdiction and that the suit should have been dismissed.

■ A party appeals the justice court's ruling by filing a petition in the county court at law within thirty days after the justice court's ruling. This filing perfects the appeal and vests jurisdiction with the county court at law. Although the department denominates its pleading a "Plea to the Jurisdiction," the department seems to complain, rather, about faulty notice or faulty service. Where a party

complains of defective service, the proper vehicle to address the shortcoming is a motion to quash. *See Wheat v. Toone,* 700 S.W.2d 915 (Tex.1985). The remedy for defective service is additional time to answer the suit. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex. 1985); *also see* Tex.R.Civ.P. 122. Even if the court below should have granted the motion to quash, the court would not have dismissed the cause but would have given the department additional time to answer. The department complains of nothing that can lead to reversible error. *See* Tex. R.App.P. 44.1(a).

If, on the other hand, we construe the department's plea as a complaint that the lack of proper notice deprived the court below of subject-matter jurisdiction, the department complains of nothing that cannot be cured by repleading, amendment, or correction. *See Barto Watson, Inc. v. City of Houston,* 998 S.W.2d 637, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (if pleading defect curable by amendment, it should be challenged by special exceptions or by motion to abate).

■ Moreover, courts generally determine subject-matter jurisdiction based on the plaintiff's pleadings. Where lack of subject-matter jurisdiction is not apparent from the pleadings, the party opposing jurisdiction must prove its allegations. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 448–49 (Tex.1996). Here, nothing in Kreipe's petition negates subject-matter jurisdiction. The appellate record contains only a copy of the original petition filed by Kreipe with the court below. The department has presented no evidence—no hearing record, no affidavit, no verified pleading—to support its allegations that Kreipe gave technically deficient notice. Nothing in the appellate record demonstrates the complained-of notice deficiencies. The department has failed to

1. Formerly Tex.Rev.Civ.Stat. art. 4413(29ee) § 7; current version at Tex.Gov't Code Ann. § 411.180(e) (Vernon 1998).

carry its burden of showing any failure to establish subject-matter jurisdiction.

■ Even if we were to construe the statutory requirement of certified notice as jurisdictional, *see Ex parte Progreso Indep. Sch. Dist.*, 650 S.W.2d 158, 160 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (requirement that any person intending to contest election give written notice within 30 days of return day of election is mandatory and may not be waived by parties because it is jurisdictional), the statute on its face does not establish a deadline for giving notice to the department. Thus where, as here, the department complains of such defective notice, nothing in the statute prevents the plaintiff from correcting the defect. The requirement for certified notice seems, instead, to be not jurisdictional, but informational. *See Honts v. Shaw*, 975 S.W.2d 816, 820 (Tex.App.—Austin 1998, no pet.) (election contestants' failure to timely notify secretary of state, as required by statute, did not deprive trial court of subject-matter jurisdiction over election contest; statute's purpose was to provide notice to secretary for informational purposes only). We overrule the department's first point of error.

### B. Felony

■ In its second point of error, the department complains that because Kreipe has been convicted of a felony, the trial court erred by finding in Kreipe's favor.

■ The construction to be given a statute is a question of law. *See Wilburn v. State*, 824 S.W.2d 755, 759 (Tex.App.—Austin 1992, no writ). When interpreting a statute, we try to give effect to legislative intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We look first to the plain and common meaning of the statute's words. *See id.* If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See id.* Further, if a statute is unambiguous, we must not use rules of construction or other extrinsic aids to create ambiguity. *See id.* at 865–66.

Only a person who has not been convicted of a felony is eligible for a license to carry a concealed weapon. *See* Act of May 16, 1995, 74th Leg., R.S., ch. 229, § 1, 1995 Tex.Gen.Laws 1998, 1999 (repealed 1997).[2] A "felony" is any offense so designated by law or if confinement for one year or more in a penitentiary is affixed to the offense as a possible punishment. *See id.* "Convicted" means an adjudication of guilt or an order of deferred adjudication whether the imposition of the sentence is subsequently probated and the person is discharged from community supervision. *See id.*

Our state Supreme Court has held that the plain language of the act bars an individual from obtaining a license where, after the individual is convicted of a felony, the individual's sentence is subsequently probated and the individual is discharged from community supervision. *See Tune*, 23 S.W.3d at 363. That court also has determined that where a party pleaded guilty to a felony, was placed on five years' probation, completed probation, was granted a new trial, and had the case against him dismissed that party remained a person who had been convicted of a felony and was not eligible for a concealed-handgun license. *See Texas Dep't of Pub. Safety v. McLendon*, No. 99–0268, 2000 WL 1335871 (Tex. Sept. 14, 2000) (per curiam).

Here, Kreipe argues that the evidence shows he was placed on deferred adjudication for possession of marijuana, less that half an ounce. Under article 725b of the 1925 Penal Code, in effect at the time of his arrest, possession of less than half an

---

**2.** Formerly Tex.Rev.Civ.Stat. art. 4415(29ee) § 2; current version at Tex.Gov't Code Ann.

§ 411.172 (Vernon 1998).

ounce of marijuana was a felony. By the time Kreipe applied for the concealed-handgun license, however, possession of less than half an ounce of marijuana was a class B misdemeanor. *See* Tex.Health & Safety Code Ann. § 481.121 (Vernon Supp. 2000). Kreipe argues that when the Legislature enacted the concealed-handgun law in 1995, lawmakers intended to bar concealed-handgun licenses only to those persons committing felonies under the criminal law then in effect. Kreipe argues that the lawmakers did not intend to bar licenses to individuals in his position, with a felony conviction for an act that a later legislature downgraded to a misdemeanor.

As evidence of legislative intent, Kreipe offered the testimony of state Sen. Jerry Patterson, chief sponsor of the 1995 handgun legislation. Patterson testified that the legislators had written the licensing statute with the 1995 criminal law in mind and that lawmakers did not intend to bar licenses to individuals in Kreipe's position. The intent of an individual legislator, even a statute's principal author, is at most persuasive authority, resembling the comments of any learned scholar of the subject. *See General Chemical Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex.1993). The individual legislator's intent is not legislative history controlling the construction to be given a statute. *See id.*

Here, the statute plainly uses the term "felony" and further stipulates the "conviction" includes deferred adjudication. Had the Legislature intended to bar licenses only to individuals convicted of felonies as defined by the criminal law as it existed at the time of enactment of the licensing law, the Legislature could have done so. Construing the statute in a manner to exclude people in Kreipe's position does lead to some odd results. For example, Kreipe— who after possessing a small amount of marijuana avoided further trouble with the law for more than twenty years—is barred from obtaining a license. Another individual, who today commits the same act but is convicted of a misdemeanor, would be eligible for a license after five years. *See* Tex.Gov't Code Ann. § 411.172(a)(8) (Vernon 1998). Thus an individual who possesses a small amount of marijuana and is law abiding for five years may obtain a license while Kreipe, who possessed an identical amount of marijuana and was subsequently law abiding for a greater period of time, is denied a licence. Nevertheless, we may not rewrite the statute's plain language. If the Legislature wishes to allow individuals in Kreipe's position to obtain concealed-handgun licenses, it is free to do so. The trial court erred in entering a negative finding against the department. We sustain the department's second point of error.

### III. Conclusion

Having overruled the department's first point of error and sustained its second point, we reverse the judgment of the court below and render judgment for the department that Kreipe is not eligible for a concealed-handgun license.

DON WITTIG, Justice, concurring and dissenting.

The majority correctly disposes of the jurisdictional issue but I am constrained to dissent to the unjustified restraint of Texans' right to bear arms. Only the legislature, under our constitution, may restrict the right to bear arms. The legislature expressly did not intend that a 30 year-old conviction for what is now a class B misdemeanor, should prohibit the issuance of a concealed hand gun permit. Accordingly, I part ways with my respected colleagues on this second issue and would affirm the trial court.

The only evidence in the record of legislative intent, the testimony of former State Senator Jerry Patterson,[1] is erroneously

---

1. Senator Patterson served a distinguished career as Senator from the Eleventh District for

six years. He is a pilot and former United States Marine Corps officer. He fought sever-

and summarily rejected by the majority. Senator Patterson was both the author and chief sponsor of the 1995 handgun legislation and presented live testimony in the county court trial of this case. The majority originally opined that under *General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916 (Tex.1993), we are barred from considering the testimony of an individual legislator in construing a statute. To the contrary, while not legislative history, the writing or testimony of a legislator, can be used as persuasive authority in determining the legislative intent. *Id.* at 923. To the credit of the majority, on rehearing they acknowledge this error. They still insist however, on totally ignoring both Senator Patterson's forthright and virtually unchallenged testimony as well as the statutory construction arguments below. While the credibility and persuasiveness of an opponent of such a bill would be suspect at best, here we are favored with the author and chief sponsor of the legislation. Given the record before us, Senator Patterson's persuasive authority is materially in point and the only argument consistent with the constitutional right. Senator Patterson makes four distinct and pertinent points. First, the legislature never intended the proscriptions of the statute to apply to class B misdemeanors. Second, when the hand gun act was passed in 1995, quite logically the legislature intended the act to be implemented as the law existed in 1995. Third, the legislature did not intend the law of 1970[2] to apply as the majority implicitly suggests. As Senator Patterson stated in his testimony, "none of us knew what the penal code was in 1970, or I assumed we didn't." It should be clear to the reader as the majority correctly points out, possession of less than a half-ounce of marijuana was patently a felony in 1970; equally clear is that the same offense was not a felony either when the legislation

passed in 1995 or at appellant's subsequent application for a permit and trial. Finally, Senator Patterson stated, "the House on many occasions sat at a table and discussed at great length the—actual going through the penal code as it was written in 1995 saying this should be a bar, this should not, line by line, item by item, offense by offense [a]nd came up with what we have there now, which is felony conviction." The senator further testified: "So we went through line by line ... [a]nd arrived at a standard based upon the penal code as we knew it. We had no knowledge of prior penal codes in the State of Texas."

Senator Patterson's opinions are well founded in our law. The Texas Constitution grants its citizens the right to bear arms. *See* TEX. CONST. art. 1, § 23. The constitution carves out a restricted limitation, allowing the legislature alone to "regulate wearing arms with a view to prevent crime." *Id.* The 1995 legislature declined to place a lifetime prohibition on today's citizens who possess less than half an ounce of marijuana. How does the interpretation forever banning an identical Texan, law abiding for more than 30 years, promote the caveat "with a view to prevent crime." *Id.* If the legislature, in enacting this statute, intended to deny citizens' constitutionally based right to bear arms against acts no longer classified as felonies, they could have so specified. Indeed, today's ruling flies dangerously near the face of our constitution, which requires the legislature, not us, to advisedly regulate wearing arms only with a view to prevent crime. We are thus restrained to interpret the statute consistent with the constitution. We are afforded not even the whisper of a notion how a misdemeanor offense of possession of less than one-half ounce of contraband 30 years ago is a regulation "only with view to prevent crime."

---

al years to gain passage of the concealed handgun act.

**2.** Surely the legislature did not intend the definition of felony to include crimes that

were felonies in 1865, 1900, 1941 or 1970. This is a far different question presented than deferred adjudication or successful completion of probation.

We normally look to a statute's plain meaning when it is unambiguous. *See Fleming Foods of Texas, Inc., v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999). This general rule is not without exceptions. *Id.* One such exception exists where the application of the literal language of a legislative enactment would produce an absurd result. *Id.* In the instant case the appellant who completed deferred adjudication for less than half an ounce of marijuana thirty years ago, without further incident, is denied the right to carry a concealed handgun; an identical offender found guilty a relatively scant 2 or 3 years ago would be permitted this right or privilege, because the legislature no longer recognizes the act as rising to the seriousness of a felony. In short, the citizen with a 30 years clean record is effectively afforded less rights than one who committed an identical act recently. The Texas Department of Public Safety itself admitted at trial to this inconsistency and requested guidance.

In *Tune v. Dep't of Pub. Safety,* 23 S.W.3d 358 (Tex.2000), our state supreme court observed that the legislature sought to keep concealed handguns out of the hands of convicted felons, even those who had satisfactorily completed their community supervision. The material focus of that decision was the word "conviction" and did not address offenses that the legislature no longer considered serious enough to be a "felony." If we look more closely at the word "felony," further insights ensue.

The Code Construction Act, section 311.011, informs that we shall read words in context and construe them according to the rules of grammar and common usage. *See* TEX.GOV'T CODE ANN. § 311.011. The concealed handgun law defines felony: "is any offense so designated by law...." The verb "is" is used in the present tense, not the past tense. The rules of grammar require us therefore to view offenses designated by law, exactly as Senator Patterson testified, as they existed at that time, not the past tense. The offense is not a felony intended or designated by the legislature.

The Code Construction Act, section 311.023, suggests interpretation considering: "circumstances under which the statute was enacted." TEX.GOV'T CODE ANN. § 311.023. Once again, as the Senator pointed out, the circumstances then existing would allow appellant to obtain a permit to carry. Similarly, what greater indicium of legislative intent could be found than the fact the legislature repealed the very offense as felony of which appellant was so long ago convicted? Are we to be heard to say that the repeal of a law prior to passage of a new statute is of no moment.

The Code Construction Act, section 311.021, *presumes* both that the legislation is both constitutional and "a just and reasonable result is intended." TEX.GOV'T CODE ANN. § 311.023. Today we interpret along questionable constitutional grounds and in a manner, that appears to me, to be less than just and reasonable. If convicted yesterday of this offense, appellant could obtain a permit today. Our constitutional rights are lost incrementally. Today's erosion of right, however slight, is not unlike one of the first drops of rain on Noah's head. And so today our court too, with the best of intentions, joins the insidious trend, adding just one more incremental restraint, to the already thousands of laws across our country limiting our citizens' right to protect themselves. Against this tide, I would stand with Senator Patterson and the trial court and hence affirm.