Opinion issued April 8, 2004








     




In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01018-CV




A.C.S. WRIGHT, Appellant

V.

SAGE ENGINEERING, INC., JOHN S. TEMPLETON, III, 
AND RONALD L. BOGGESS, Appellees




On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2002-48735 




O P I N I O N

          A.C.S. Wright (“Wright”) appeals the denial of his special appearance


 in a suit
brought against him by appellees Sage Engineering, Inc., John S. Templeton, III, and
Ronald L. Boggess. In addressing Wright’s three issues raised on appeal, we
determine (1) whether Wright properly asserted in the trial court his complaint that
appellees failed to serve him in accordance with the Hague Convention, (2) whether
Wright had the requisite minimum contacts with Texas for the trial court to exercise
personal jurisdiction over him, and (3) whether the exercise of personal jurisdiction
over Wright comports with traditional notions of fair play and substantial justice.
          We affirm.
Factual and Procedural Background
          Wright is a citizen and resident of Switzerland. Sage Engineering, Inc. (“SEI”)
is a Texas corporation formed in 1995 with its principal place of business in Houston. 
SEI designs, manufactures, and sells miniature penetrometer testing equipment used
in offshore oilfield production. The founding shareholders of SEI were John S.
Templeton, III, (“Templeton”), Ronald L. Boggess (“Boggess”), and Sage Holding
AG (“Sage Holding”). 
          Wright is the sole director of Sage Holding. In November 2000, Wright signed
an agreement for the sale of Sage Holding to Thales, Inc. Thales eventually merged
Sage Holding into Thales Geosolutions, Inc. SEI, Templeton, and Boggess
(collectively referred to as “appellees”) sued Wright, Sage Holding, and several
Thales entities.


 Appellees allege that the defendants stole their design technology
related to the miniature penetrometer testing equipment. The claims asserted by
appellees included misappropriation of trade secrets, breach of fiduciary duty, unjust
enrichment, breach of contract, conversion, conspiracy, fraud, and fraudulent
inducement. 
          In their original petition, appellees made the following factual allegations:
          •        Boggess and Templeton provided SEI with their design technology for
miniature penetrometer testing equipment. 
 
          •        The design technology is the trade secrets and confidential information
of the appellees.
 
          •        SEI was “the exclusive provider of the miniature penetrometer testing
equipment to Sage Holding” and Sage Holding’s corporate affiliates. 
 
          •        Sage Geodia, a corporate affiliate of Sage Holding, purchased
equipment and parts from SEI. Rather, than using this equipment to
service their clients, Sage Geodia and “other affiliates” “reverse
engineered” and duplicated the equipment and technology.
 
          •        Wright negotiated the purchase of Sage Holding by Thales. Under the
terms of this agreement, Sage Holding agreed to provide Thales with
“the technology, trade secrets, confidential information and other
property and rights” of appellees. 
 
          •        The Sage parties and Thales agreed to keep the negotiations secret from
SEI and to exclude SEI from the corporate acquisition.
 
          •        Thales purchased Sage Holding in November 2000. At that time, Thales
“folded” Sage Holding and SEI’s misappropriated technology into
Thales Geosolutions, which then used SEI’s technology, i.e., trade
secrets, to market and sell miniature penetrometer testing equipment. 
          Wright filed a special appearance asserting that he was not amenable to process
issued by a Texas court. Wright argued that the trial court lacked personal
jurisdiction over him because (1) appellees’ failed to serve him through the Hague
Convention; (2) Wright lacked the requisite minimum contacts with Texas to satisfy
the requirements of due process; and (3) the trial court’s exercise of personal
jurisdiction over him does not comport with traditional notions of fair play and
substantial justice. The trial court denied Wright’s special appearance. This
interlocutory appeal followed. 
Defective Service of Process
          In his first issue, Wright contends that the trial court should have granted his
special appearance on the basis that appellees failed to serve him with process in
compliance with the Hague Convention. Appellees counter that Wright’s special
appearance was properly denied on this basis because, if he thought that service was
defective, Wright should have raised that complaint in a motion to quash, not in a
special appearance.


 
          A special appearance is a specific procedural mechanism to litigate one issue:
that is, a special appearance is “for the purpose of objecting to the jurisdiction of the
court over the person or property of the defendant on the ground that such party or
property is not amenable to process issued by the courts of this State.” Tex. R. Civ.
P. 120a; see also Tex. Commerce Bank N.A. v. Interpol 1980 Ltd. P’ship, 703 S.W.2d
765, 775 (Tex. App.—Corpus Christi 1985, no writ). The rule applies only when a
defendant contends he is not amenable to process. See Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 201-02 (Tex. 1985); Oliver v. Boutwell, 601 S.W.2d 393,
395 (Tex. Civ. App.—Dallas 1980, no writ). The words “not amenable to process
issued by the courts of this state” mean that the special appearance is available solely
to establish that the Texas court cannot, under the federal and state constitutions and
the appropriate state statutes, validly obtain jurisdiction over the person or the
property of the defendant. Kawasaki, 699 S.W.2d at 202. 
          Our supreme court held in Kawasaki that defective service of process must be
challenged by a motion to quash rather than by a special appearance. Id. This is
because a curable defect in service of process does not defeat a nonresident’s
amenability to the court’s process and serves only to provide the non-resident
defendant with more time to answer. See id. at 202; see also Tex. R. Civ. P. 122. 
          Wright acknowledges the holding in Kawasaki but argues that it has been
called into question by the Unites States Supreme Court’s decision in Murphy Bros.
v. Michetti Pipe Stringing, 526 U.S. 344, 346, 119 S. Ct. 1322, 1325 (1999). In
Murphy Bros., the court held that mere receipt of a complaint unattended by any
formal service did not trigger a defendant’s time to remove a case from state court. 
Murphy Bros., 526 U.S. at 347-48, 119 S. Ct. at 1325. Wright cites Murphy Bros. for
the proposition that “[a]n individual or entity named as a defendant is not obliged to
engage in litigation unless notified of the action, and brought under a court’s
authority by formal process.” Murphy Bros., 526 U.S. at 347-48, 119 S. Ct. at 1325. 
Wright contends that requiring him to raise his complaint regarding defective service
in a motion to quash, rather than in a special appearance, violates this principle
because it requires him to make an appearance in a suit for which he has not been
properly served and forces him to waive his complaint that he is not amenable to
process issued by a Texas court. 
          As an intermediate court of appeals, we must follow our state supreme court’s
expressions of the law and leave changes in the law to that court. See Lubbock
County v. Trammel’s Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (“It is not
the function of a court of appeals to abrogate or modify established precedent. That
function lies solely with [the Supreme] Court.”); Lofton v. Texas Brine Corp., 777
S.W.2d 384, 386 (Tex. 1989) (“This court need not defend its opinions from criticism
from courts of appeals; rather they must follow this court’s pronouncements.”). 
Absent a clear expression that a decision of our supreme court has been overruled, we
are bound by its decisions. See Trammel’s Lubbock Bail Bonds, 80 S.W.3d at 585; 
Lofton, 777 S.W.2d at 386. Murphy Bros. does not contain such a clear expression
with regard to our supreme court’s decision in Kawasaki. We also note that, since the
issuance of the decision in Murphy Bros., the Texas Supreme Court has cited
Kawasaki for the proposition that a motion to quash is the appropriate device to
object to procedural error in service. See Baker v. Monsanto, 111 S.W.3d 158, 161
(Tex. 2003). Thus, we leave to our state supreme court—or the United States
Supreme Court—the determination of whether the decision in Kawasaki is in conflict
with the decision in Murphy Bros. Until that time, we are bound by Kawasaki. 
          Applying the principles enunciated in Kawasaki to the present case, we
conclude that it was not appropriate for Wright to assert his complaint regarding
defective service of process in his special appearance. A complaint regarding a
curable defect in service of process, such as the one raised by Wright, does not defeat
a nonresident’s amenability to the court’s process; thus, it should not be brought via
a special appearance.


 See Kawasaki, 699 S.W.2d at 202; see also Tex. R. Civ. P.
120a. Rather, a motion to quash is the appropriate procedural device to raise such
objection. See Wheat v. Toone, 700 S.W.2d 915, 915 (Tex. 1985); Tex. Dept. of Pub.
Safety v. Kreipe, 29 S.W.3d 334, 336 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied). The remedy for defective service in Texas state court is additional time to
answer the suit, not dismissal.


 See Kawasaki, 699 S.W.2d at 202-03; Alcala v.
Williams, 908 S.W.2d 54, 56 (Tex. App.—San Antonio 1995, no writ); see also Tex.
R. Civ. P. 122. Accordingly, we hold that the trial court did not err in failing to grant
Wright’s special appearance on the basis that appellees did not serve him with
process in accordance with the Hague Convention.
          We overrule Wright’s first issue.
Amenability to Service of Process
          In his second issue, Wright contends that the trial court erred in denying his
special appearance because he does not have sufficient minimum contacts with this
forum for a Texas court to exercise personal jurisdiction over him.
General Principles of Personal Jurisdiction
          Due process considerations
          Two conditions must be met for a Texas court to exercise personal jurisdiction
over a nonresident defendant such as Wright: the Texas long-arm statute must
authorize the exercise of jurisdiction, and the exercise of jurisdiction must be
consistent with the guarantees of due process. Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex.
1990). The long-arm statute provides for the assertion of jurisdiction over any
nonresident “doing business” in Texas, which by statutory definition includes those
defendants who commit torts in whole or in part in this state. Tex. Civ. Prac. &
Rem. Code Ann. § 17.042(2) (Vernon 1997). Because the language of the long-arm
statute is broad, its requirements are considered satisfied if the exercise of personal
jurisdiction comports with federal due process limitations. CSR Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996). Thus, in practice, the two conditions are conflated into
one requirement of due process. City of Riverview, Michigan v. Am. Factors, Inc., 77
S.W.3d 855, 857 (Tex. App.—Dallas 2002, no pet.).
          The cornerstone of due process in the context of jurisdiction is the minimum
contacts analysis. Id. The goal of this analysis is to protect a defendant from being
unjustifiably called before the courts of a foreign state. Id. To establish minimum
contacts with a state, the defendant “must do something purposeful to avail himself
of the privilege of conducting activities in the forum, thus invoking the benefit and
protection of its laws.” Schlobohm, 784 S.W.2d at 357; see also Burger King Corp.
v. Rudzewicz, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183-84 (1985). 
          A defendant should not be subject to the jurisdiction of a Texas court based
upon random, fortuitous, or attenuated contacts. CSR, 925 S.W.2d at 595. The
purposeful availment requirement ensures that the nonresident defendant’s contact
must result from its purposeful contact, not the unilateral activity of the plaintiff or
a third party. See Guardian Royal, 815 S.W.2d at 227. It is the quality and nature of
the contacts, rather than their number, that is important. Id. at 230 n. 11. The
exercise of personal jurisdiction is proper when the contacts proximately result from
actions of the nonresident defendant that create a substantial connection with the
forum state. Id. at 226.
          Foreseeability
          Although not determinative, foreseeability is an important consideration in
deciding whether the nonresident defendant has purposefully established minimum
contacts with the forum state. Id. at 227. Foreseeability is not an independent
component of the minimum contacts analysis but is implicit in the requirement that
there be a “substantial connection” between the nonresident defendant and Texas
arising from the action or conduct of the nonresident defendant purposefully directed
toward Texas. Id. Individuals must have fair warning that a particular activity may
subject them to the jurisdiction of a foreign sovereign. Burger King, 471 U.S. at 472,
105 S. Ct. at 2182; Guardian Royal, 815 S.W.2d at 226. In other words, an important
inquiry in the jurisdictional analysis is whether “the defendant’s conduct and
connection with the forum State [is] such that he should reasonably anticipate being
haled into court there.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
297, 100 S. Ct. 559, 567 (1980). 
          Specific Jurisdiction
          Personal jurisdiction exists if the nonresident defendant’s minimum contacts
give rise to either specific jurisdiction or general jurisdiction. Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 & nn.8-9, 104 S. Ct.
1868, 1872 & nn.8-9 (1984); Guardian Royal, 815 S.W.2d at 227. Specific
jurisdiction is established if the nonresident defendant’s alleged liability arises from
or is related to the defendant’s purposeful contact with the forum. Helicopteros , 466
U.S. 414 & n.8, 104 S. Ct. at 1872 & n.8; Guardian Royal, 815 S.W.2d at 228. 
          When specific jurisdiction is asserted, the minimum contacts analysis focuses
on the relationship among the defendant, the forum, and the litigation. Guardian
Royal, 815 S.W.2d at 227-28. It is not necessary that a nonresident defendant’s
conduct actually occur in Texas, as long as the defendant’s acts were purposefully
directed toward the state. Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482,
1487 (1984); CSR, 925 S.W.2d at 595. “[A] defendant should reasonably anticipate
being haled into court where the effects of its conduct have been intentionally caused
through the purposeful direction of activity toward the forum state, even if the
defendant never physically enters the state.” Cole v. The Tobacco Inst., 47 F. Supp.
2d 812, 815 (E.D. Tex. 1999).
Standard and Scope of Review
          Whether a court has personal jurisdiction over a defendant is a question of law,
which we review de novo. Marchand, 83 S.W.3d at 794. However, the trial court
frequently must resolve questions of fact before deciding the jurisdiction question. 
Id. When, as here, the trial court does not issue findings of fact and conclusions of
law with its special-appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied. Id. at 795. In cases in which the appellate
record includes both the reporter’s and clerk’s records, these implied findings are not
conclusive and may be challenged for legal and factual sufficiency. Id. In contrast,
we review the trial court’s decision de novo when the underlying facts are undisputed
or otherwise established. AmQuip Corp. v. Cloud, 73 S.W.3d 380, 384 (Tex.
App.—Houston [1st Dist.] 2002, no pet.); Experimental Aircraft Ass’n v. Doctor, 76
S.W.3d 496, 502-03 (Tex. App.—Houston [14th Dist.] 2002, no pet.).
Specific Jurisdiction Based on Torts “Committed in Whole or in Part in Texas” 
          We begin our review of the trial court’s denial of Wright’s special appearance
by determining whether specific jurisdiction exists over Wright. As plaintiffs,
appellees bore the initial burden to make sufficient allegations to bring Wright within
the personal jurisdiction of the trial court. Marchand, 83 S.W.3d at 793; McKanna
v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965). Once appellees met this burden, then
Wright was required to negate all possible grounds for personal jurisdiction. 
Marchand, 83 S.W.3d at 793. 
          Appellees alleged in their original petition—the live pleading at the time the
trial court decided the special appearance—that Wright committed tortious acts in
Texas. Appellees correctly assert that our long-arm statute allows personal
jurisdiction for any tort “committed in whole or in part in Texas.” Tex. Civ. Prac.
& Rem. Code Ann. § 17.042(2). Due process considerations are also satisfied if a
defendant directs his tortious conduct toward the forum state with the foreseeable
knowledge that his actions will cause harm to a resident of the forum and the
defendant purposefully avails himself of the privilege of conducting activities within
the forum state. See Burger King, 471 U.S. at 474-76, 105 S. Ct. at 2182-84; Calder,
465 U.S. at 789-90, 104 S. Ct. at 1487. 
          Appellees also alleged in their original petition that Wright induced Templeton
and Boggess to contribute their trade secrets and “confidential information” to SEI. 
Appellees asserted, “Wright misrepresented the terms upon which these assets of
Plaintiffs were contributed to SEI, as evidenced by . . . misappropriating the trade
secrets, confidential information, corporate assets and corporate opportunities of
Plaintiffs Templeton and Boggess.”
          Appellees expounded on these allegations in their response to Wright’s special
appearance. In support of their response, appellees submitted the affidavit testimony
of Templeton. Regarding misrepresentations made by Wright in Texas, Templeton’s
affidavit provided as follows:
At the time of the formation of SEI, numerous representations were
made by Wright and Sage Holding that equipment design technology,
that I, along with Ronald Boggess, held at that time would remain the
property of SEI, as would all corporate opportunities arising from the
production and sale of that equipment. Those representations were
made to me and Boggess and supported repeatedly by Wright in a series
of telephone calls to me and SEI in Texas and e-mail correspondence
sent to Texas, all of which occurred at the time of the formation of SEI
in and around December 1995.


 

          We conclude that appellees met their burden of pleading sufficient
jurisdictional allegations to bring Wright within the specific personal jurisdiction of
the trial court.



Fiduciary Shield Doctrine
          Because appellees met their initial burden, Wright was required to negate all
possible grounds for personal jurisdiction. Within the context of the special
appearance proceeding, Wright offered no evidence refuting appellees’ claim that he
made the “numerous representations” referenced in Templeton’s affidavit.


 Wright
neither disputes that the alleged representations were directed toward Texas nor
denies that appellees’ tort claims arise out of or relate to the representations. Wright
also does not contend that he could not have reasonably foreseen being subject to
jurisdiction in Texas because of such representations. Rather, Wright contends that
he lacks the requisite minimum contacts with Texas because he performed the alleged
tortious acts as a corporate representative of Sage AG, not in his individual capacity. 
          In this respect, Wright invokes the fiduciary shield doctrine, which protects a
corporate officer or employee from the trial court’s exercise of general personal
jurisdiction when all of the individual’s contacts with Texas were on behalf of his
employer.


 SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 650-51 (Tex.
App.—Fort Worth 2003, pet. filed); Brown v. Gen. Brick Sales Co., 39 S.W.3d 291,
297-98 (Tex. App.—Fort Worth 2001, no pet.). Texas courts applying the fiduciary
shield doctrine have expressly limited its application to attempts to exercise general
jurisdiction over a nonresident defendant. Stern v. KEI Consultants, Ltd., 123 S.W.3d
482, 488 (Tex. App.—San Antonio 2003, no pet. h.); SITQ, 111 S.W.3d at 651;
Brown, 39 S.W.3d at 300; cf. Garner v. Furmanite Australia Pty., Ltd., 966 S.W.2d
798, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that fiduciary
shield doctrine protected Australian resident from trial court’s exercise of general
jurisdiction because his only contacts with Texas were on his employer’s business)
(emphasis added).
          The fiduciary shield doctrine does not protect a corporate officer from specific
personal jurisdiction as to intentional torts or fraudulent acts for which he may be
held individually liable. Jackson v. Kinkaid, 122 S.W.3d 440, 448 (Tex.
App.—Corpus Christi 2003, no pet. h.); SITQ, 111 S.W.3d at 651; see also Gen. Elec.
v. Brown & Ross Int’l Distribs., Inc., 804 S.W.2d 527, 532-33 (Tex. App.—Houston
[1st Dist.] 1990, writ denied) (holding that corporate officers, who had personally
arranged theft of design plans, ordered counterfeit and mislabeled parts, and made
misrepresentations to customers were subject to personal jurisdiction in Texas). It is
well-settled that a corporate agent can be held individually liable for fraudulent
statements or knowing misrepresentations even when they are made in the capacity
of a corporate representative. Shapolsky v. Brewton, 56 S.W.3d 120, 133 (Tex.
App.—Houston [14th Dist.] 2001, pet. denied); see also Miller v. Keyser, 90 S.W.3d
712, 714-18 (Tex. 2002) (holding sales agent may be held individually liable under
DTPA for misrepresentations); Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex.
App.—Houston [1st Dist.] 1985, no writ) (holding corporate agent personally liable
for false representations). The causes of action asserted by appellees against Wright
individually, which are based on Wright’s alleged misrepresentations, are claims for
which Wright could be held individually liable. Therefore, the fiduciary shield
doctrine is not available to Wright as a defense to the trial court’s exercise of specific
personal jurisdiction based on his alleged misrepresentations. See D.H. Blair
Investing Banking Corp. v. Reardon, 97 S.W.3d 269, 278 (Tex. App.—Houston [14th
Dist.] 2002, pet. dism’d w.o.j.) (refusing to apply fiduciary shield doctrine to protect
defendant from personal jurisdiction based on alleged misrepresentations that were
directed into Texas and foreseeably relied on in Texas, despite defendant’s claim that
he acted only in corporate capacity); Shapolsky, 56 S.W.3d at 133-34 (same). We
conclude that, by invoking the fiduciary shield doctrine, Wright has not satisfied his
burden of negating the assertion of personal jurisdiction based on specific
jurisdiction. 
Minimum Contacts Analysis
          That Wright is alleged to have committed a tort in Texas is not dispositive of
the jurisdictional issue presented here; such allegations alone do not give Texas
courts jurisdiction over a nonresident. Shapolsky, 56 S.W.3d at 133. Rather, there
must be a substantial connection between the contact and the cause of action in the
forum state.


 See id.
          Comporting with well-settled law, this and other appellate courts have held that
a misrepresentation made by a nonresident defendant directed toward Texas is
sufficient to assert specific jurisdiction. Michiana Easy Livin’ Country, Inc. v.
Holten, 127 S.W.3d 89, 98-99 (Tex. App.—Houston [1st Dist.] 2003, pet. filed)
(holding that nonresident defendant had sufficient minimum contacts to subject it to
specific personal jurisdiction in Texas in case in which plaintiff alleged that, during
negotiations conducted by telephone, nonresident defendant made misrepresentations
regarding product defendant sold to plaintiff and that these misrepresentations
constituted violations of the DTPA, fraud, breach of warranty, and breach of
contract); Boissiere v. Nova Capital, 106 S.W.3d 897, 904-06 (Tex. App.—Dallas
2003, no pet.) (concluding that allegations asserted in fraud and negligent
misrepresentation case that nonresident defendants made misrepresentations in
telephone calls to Texas resident, who relied on representations in Texas and was
induced to provide defendants with plaintiff’s trade secret information, were
sufficient to support specific jurisdiction in Texas); Shapolsky, 56 S.W.3d at 135
(holding that plaintiff’s allegations that nonresident defendant made intentional
misrepresentations to plaintiff in Texas by phone, fax, and mail to induce plaintiff to
contract with defendant were sufficient to support specific jurisdiction). 
          Regardless of what the evidence may ultimately show on full trial of this
matter, the uncontroverted allegations and evidence presented within the context of
the special appearance proceeding show the following: (1) Wright made numerous
representations, oral and written, on which Templeton and Boggess relied, ultimately
to their economic detriment; (2) Wright directed the alleged misrepresentations
toward Texas residents who received and relied on the misrepresentations in Texas;
and (3) Wright’s misrepresentations induced Templeton and Boggess to transfer their
proprietary information to SEI, a corporation formed under the laws of Texas, with
its principal place of business in Houston. By making misrepresentations in Texas
with the ultimate goal of obtaining the trade secrets of Texas residents, Wright
purposefully availed himself of the benefits and protections of Texas law. See
Shapolsky, 56 S.W.3d at 134. When, as here, a defendant intentionally sends false
information into a state, knowing it will be relied on by a resident of the forum state,
there is a foreseeable consequence of direct economic injury to the resident at its
domicile. Id. Thus, it should have been foreseeable to Wright that he might be haled
into a Texas court to defend a lawsuit arising out of the alleged misrepresentations. 
See id. Relatedly, a nexus exists between the torts that appellees claim against Wright
and the alleged contacts with Texas; that is, Wright’s alleged misrepresentations give
rise to some of the causes of action appellees assert against him, particularly
appellees’ claims for fraud and fraudulent inducement. See id. (finding nexus
between contacts and allegations that misrepresentations induced plaintiff to enter
into contract with nonresident defendant). Thus, we conclude that Wright’s alleged
misrepresentations constitute sufficient purposeful minimum contacts with Texas to
satisfy due process considerations.



          We overrule Wright’s second issue.
Fair Play and Substantial Justice
          Having concluded that Wright had sufficient contacts with Texas, we next
consider Wright’s third issue in which he contends that the exercise of jurisdiction
over him offends traditional notions of fair play and substantial justice. See Guardian
Royal, 815 S.W.2d at 231. The following factors, when appropriate, should be
considered in making this assessment: (1) the burden on the defendant, (2) the
interests of the forum state in adjudicating the dispute, (3) the plaintiff’s interest in
obtaining convenient and effective relief, (4) the interstate judicial system’s interest
in obtaining the most efficient resolution of controversies, and (5) the shared interest
of the several states in furthering fundamental substantive social policies. Id.          When an international dispute is involved, the following factors, when
appropriate, should also be considered: (1) the unique burdens placed upon the
defendant who must defend itself in a foreign legal system; and (2) the procedural and
substantive policies of other nations whose interests are affected as well as the federal
government’s interest in its foreign relations policies. Id at 229. But only in rare
cases will the exercise of jurisdiction not comport with fair play and substantial
justice when, as here, the nonresident defendant has purposefully established
minimum contacts with the forum. Id. at 231. Thus, the burden is on the defendant
to “‘present a compelling case that the presence of some other considerations would
render jurisdiction unreasonable.’” Id. (quoting Burger King, 471 U.S. at 477, 105
S. Ct. at 2185) (emphasis added).
          Wright first asserts that his status as an international defendant is a
determinative factor in the fairness analysis. In support of this contention, Wright
relies on our holding in Minucci v. Sogevalor, S.A., 14 S.W.3d 790 (Tex.
App.—Houston [1st Dist.] 2000, no pet.). In Minucci, we held that subjecting an
Italian citizen to jurisdiction in Texas did not comport with traditional notions of fair
play and substantial justice. Id. at 799. In reaching this decision, we reasoned as
follows:
Texas has no interest in adjudicating this dispute. The cause of action
did not occur in Texas; neither party is a resident of this state; Swiss law
governs the dispute, none of the investors were Texas citizens, and the
contract was written in Italian. Thus, Texas would not be protecting its
citizens from the potential future actions of Minucci.
Id. at 798. In this case, the opposite can be said. Here, Texas has a strong interest in
adjudicating this dispute. As discussed in the minimum contacts analysis, Wright is
alleged to have committed tortious acts in Texas against Texas residents. The State
of Texas has an obvious interest in providing a forum for resolving disputes involving
its citizens, particularly those disputes in which the defendant allegedly committed
a tort in whole or in part in Texas. Shapolsky, 56 S.W.3d at 135. 
          In support of his contention that defending this case in Texas would subject
him to extreme financial and personal burdens, Wright testified as follows in his
affidavit offered in support of his special appearance:
At the present time, I am the sole custodian for my three children who
live with me in Switzerland. If I were compelled to appear in Texas to
defend this lawsuit[,] it would be an extreme burden upon my children,
and myself, to be away from them. It would also be a tremendous
expense to have to travel to Texas to litigate this dispute while leaving
my children behind in Switzerland. The financial expense of traveling
to Texas while leaving my children behind in Switzerland, would place
great strain on myself, and my family.
 
On July 1, 2003, Thales Overseas Holdings Limited (“Thales
Overseas”) lodged a Request for Arbitration against me in accordance
with Article 4 of the 1998 Rules of Arbitration of the International
Chamber of Commerce. Thales Overseas request for Arbitration seeks
monetary damages from me personally. The laws of Switzerland
exclusively govern the Request for Arbitration. Thales Overseas
acknowledges Switzerland’s exclusive jurisdiction in its request. The
arbitration is to take place in Zurich, Switzerland.
 
. . . [H]aving to litigate one dispute in Texas and one dispute in
Switzlerland over substantially the same issues would be a great
hardship on me, and my children.
          Undoubtedly, litigation away from home creates hardship for a defendant;
however, there is no legal requirement that this hardship must be borne instead by the
plaintiff whenever the defendant is not found in the state of the plaintiff’s residence. 
See Brown & Ross Int’l Distribs., 804 S.W.2d at 531-32 (rejecting nonresident
defendant’s argument that defending suit in Texas was financially burdensome
because it would be equally burdensome for plaintiff to litigate in nonresident
defendant’s forum). While the burden on the nonresident defendant is a consideration
in our due process analysis, it is not determinative. See Guardian Royal, 815 S.W.2d
at 231 (stating that nonresident defendant must present compelling case of presence
of other considerations, outside inconvenience, and distance to render jurisdiction
unreasonable). This is particularly true when, as in this case, Texas has a strong
interest both in providing a forum for its residents and in holding parties who
committed tortious acts against its residents accountable. See id. at 232 (recognizing
that interests of forum state and plaintiff will frequently justify severe burden placed
on nonresident defendant) (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S.
102, 114, 107 S. Ct. 1026, 1033 (1987)). We conclude that the exercise of personal
jurisdiction over Wright in this case comports with traditional notions of fair play and
substantial justice.
          We overrule Wright’s third issue.
Conclusion
          We hold that the trial court properly denied Wright’s special appearance.
Wright did not successfully negate specific jurisdiction and failed to show that the
exercise of personal jurisdiction over him offends traditional notions of fair play and
substantial justice. We affirm the order of the trial court denying Wright’s special
appearance.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.