Motion for Rehearing Overruled and Opinion of March 7, 2002 Withdrawn;
Affirmed as Modified and Corrected Opinion and Concurri
















Motion for
Rehearing Overruled and Opinion of March 7, 2002 Withdrawn; Affirmed as
Modified and Corrected Opinion and Concurring Opinions filed December 12, 2002.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-00790-CV

_______________

 

HEALTHCARE CENTERS OF TEXAS,
INC. D/B/A THE LAPORTE HEALTHCARE CENTER, Appellant

 

V.

 

VIRGINIA MARTINE RIGBY, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE
ESTATE OF JEWELL UNDERWOOD, DECEASED, Appellee

________________________________________________________________________

 

On Appeal from
the Probate Court Number Two

Harris County, Texas

Trial Court
Cause No. 296,896-401

________________________________________________________________________

 

C O R R E C T E D   O P I N I O N

            We withdraw our opinion of March 7, 2002 and issue
this corrected opinion.  Appellee’s Motion For Rehearing is overruled.

            Healthcare Centers of Texas d/b/a
The LaPorte Healthcare Center appeals a judgment in favor of Virginia Martine
Rigby on the following grounds: (1) exemplary damages are barred or capped by
chapter 41 of the Texas Civil Practice and Remedies Code; (2) the evidence is
legally and factually insufficient to support the jury’s verdict on the cause
of action for negligence; (3) the trial court failed to provide for segregation
of exemplary damages in the jury charge; (4) the actual and exemplary damage awards
were excessive; and (5) because of cumulative errors of law, Healthcare is
entitled to a new trial in the interest of fairness and justice.  The jury awarded Rigby $50 million in
punitive damages and $5 million in actual damages.  The trial judge remitted those amounts to $10
million and $1 million, respectively. 
Finding that Texas law
prohibits punitive damages in this case, we vacate that portion of the court’s
judgment and affirm the remainder of the judgment.

Facts

            This case
arises out of an attempted sexual assault by Morris Jones on Jewel Underwood
while both were residents at LaPorte Healthcare Center.  Jones was admitted to Anahuac Healthcare Center in
December 1995.  Anahuac and
LaPorte are nursing homes owned by Healthcare Centers of Texas, Inc.  By October 1996, Jones had begun to exhibit
inappropriate behavior at the Anahuac
facility.  Nurses at Anahuac testified
that Jones repeatedly sat in the public rooms of the nursing home with his
pants unzipped and his penis out in front of other residents.  Anahuac nursing
home kept cats and kittens at its facility because it was thought that pets
would be therapeutic for the residents. 
Nurses observed Jones several times on the patio outside the dining room
using the cats as masturbation aids. 

            After observing several incidents of
inappropriate behavior with cats, Joanne Mathis, a nurse at Anahuac, observed
Jones attempting to sexually assault a male resident in a closed restroom.  The resident was blind, disoriented, and
suffered from Alzheimer’s disease.  Jones
was also seen wandering into residents’ rooms and closing their doors.  When confronted with this aberrant behavior,
Jones became angry and denied any wrongdoing. 
The daughter of a staff member reported that Jones tried to follow her
into a linen closet.  She stated that he
pulled on the doorknob to get into the closet with her.  

            The overall belief of the nurses and
staff at Anahuac was that Jones was a threat
to other residents and should not be in a nursing home.  Although the nurses attempted to monitor
Jones more closely than other residents, there was not enough staff to fully
protect other patients.  Several staff
members testified that it was foreseeable he would sexually assault an elderly,
disabled resident.  The day Jones was
discharged from Anahuac, Alicia Morgan, the
director of nursing, wrote on his chart, “This resident is at risk for harming
others.”  The nurses repeatedly informed
Dr. Keith Rapp of Jones’s aberrant behavior. 
Dr. Rapp was the medical director of both the Anahuac and LaPorte Healthcare Centers and the
personal physician for Jones and Mrs. Underwood. 

            Dr. Kenneth Huff, a psychologist,
was asked to evaluate and treat Jones for depression in April 1996.  After two weeks, Dr. Rapp directed that Dr.
Huff discontinue treatment, stating that Jones was no longer depressed.  Dr. Huff later saw Jones on October 17, 1996,
and diagnosed him as having major depression and sexual paraphilia,
which Dr. Huff defined as, “sexual acting out.” 
Dr. Huff’s records contained observations of Jones’s sexual impropriety
with cats and expressed the concern that Jones may behave in a sexually
inappropriate manner with low-functioning female residents.  Dr. Huff concluded that Jones was “very
dangerous” and needed to be placed in a more secure facility.  Dr. Huff reported that a crisis atmosphere
surrounding Jones had reached a crescendo by mid-October 1996.  Dr. Huff reported that Jones’s daughter
wanted to get help for her father, but she could not bring him to her home
because she could not trust him around small children.

            On November 27, 1996, Jones was involuntarily
committed to a psychiatric unit at San
 Jacinto Hospital.  Dr. Wamble of San
Jacinto Health Care Center wrote in Jones’s chart that Jones “is likely to
cause serious harm to others.”  On December 10, 1996, Dr. Wamble sought to discharge Jones from San
 Jacinto.  The nursing
home administrator and director of nursing at Anahuac sent Robin
McDaniel, the assistant director of nursing at Anahuac, to San
 Jacinto to determine whether Jones could return to Anahuac.  Mrs. McDaniel reviewed Jones’s records and
discovered that he had been videotaped masturbating in the open, had been
verbally aggressive with the staff, and had been hoarding food in his room —
all behaviors Jones had exhibited at Anahuac.  Further, Jones propositioned a female staff
member at San Jacinto for sex.  Although Jones was taking medication, he
continued to behave inappropriately at San
 Jacinto.  Mrs. McDaniel
concluded that Jones should not be placed in any nursing home and that he
needed a more restrictive environment.

            Anahuac refused to
accept Jones from San Jacinto.  Dr. Rapp then called Green Acres, another
nursing home owned by Healthcare Centers of Texas where he
was a medical director.  The
administrator at Green Acres reviewed Jones’s records and refused to take him
because he did not want that type of resident. 
Dr. Rapp then called Dorsey Greer, the administrator of LaPorte nursing
home.

            Dorsey Greer testified that Dr. Rapp
told him he had a potential new resident for LaPorte who had been at Anahuac, then
discharged to San Jacinto Hospital.  Dr. Rapp told Greer that Anahuac had
refused to accept Jones from San Jacinto.  According to Greer’s testimony, Dr. Rapp
stated that Jones had been a model resident except for one incident of
inappropriate sexual behavior with a cat. 
It was Dr. Rapp’s opinion that the incident occurred because Jones did
not take his medication.  Greer testified
that in admitting a new resident, it was his policy to review the records from
the discharging institution and any other pertinent information about the
resident.  He would ordinarily send the
director of nursing to the psychiatric hospital to review the records, but he
did not do so in the case of Jones. 
Jones was admitted to LaPorte on December 12, 1996. 
Greer testified that had he known of Jones’s history at Anahuac, he would
have moved Jones closer to the nurses’ station and would have discharged him
“the first time he went near another person.”

            Two or three days after Jones’s
admission, Glenda Raglund, the quality assurance
nurse for Anahuac and LaPorte, learned Jones
had been admitted to LaPorte.  She
immediately called Greer and asked him, “Why in the bleep did you let this
person get into our facility?”  She reported
Jones’s history at Anahuac and told Greer he should
make arrangements to place Jones in a more secure facility as soon as
possible.  Greer began to explore
alternatives for discharging Jones, however, pursuant to State regulations,
Jones could not be discharged until he displayed aberrant behavior at LaPorte. 

            Greer instructed the director of
nursing to meet with the nurses and require them to watch Jones closely.  He instructed her not to tell the nurses
about Jones’s behavior at Anahuac because he
did not want a “witch hunt.”  The
director of nursing did not tell the nurses at LaPorte about Jones’s behavior
at Anahuac.

            The nurses and nurses’ aids at
LaPorte began noticing Jones’s behavior. 
They complained that he wandered into residents’ rooms, urinated
outdoors, became angry when he was asked to use the restroom indoors, and
become angry when asked to take a shower. 
One nurse’s aid testified that she had to ask for help to remove Jones
from a female resident’s room when she could not verbally persuade him to
leave.  Several LaPorte nurses testified
that if they had known Jones was a safety threat, they would have moved him to
a room much closer to the nurses’ station and would have monitored him every
fifteen minutes to protect other residents. 
Jones’s room was at the end of the hall across from Mrs. Underwood’s
room, far from the nurses’ station.  A
nurse at LaPorte reported to Greer and the director of nursing that Jones was
frequently seen roaming into Mrs. Underwood’s room.

            Approximately ten days after Jones’s
admission to LaPorte, Terri Leakey, a nurse, found a piece of paper with
Jones’s name on it, three one dollar bills, and two pills on the right side of
Mrs. Underwood’s bed, below her pillow. 
Mrs. Leakey expressed concern because the note and money were on the
side of the bed adjacent to the wall. 
Mrs. Leakey testified that Jones was too weak to move the bed and too
short to reach over Mrs. Underwood.  She
reached the conclusion that Jones could have only reached that location by
getting into Mrs. Underwood’s bed.  After
reporting this incident to Greer and to the director of nursing, Leakey asked
Greer if Jones could be moved to a room closer to the nursing station, but
Greer refused. 

            Virginia Rigby testified that she
placed her mother in LaPorte Healthcare Center in
1986.  Mrs. Rigby visited her mother for
several hours twice a day.  By December
1996, Mrs. Underwood was blind and mostly deaf, but was alert and aware of her
surroundings.  On December 27, 1996, Mrs.
Rigby discovered a one dollar bill under the covers of her mother’s bed near
her mother’s waist.  Mrs. Rigby took the
money to the nurses’ station because she thought one of the nurses might have
dropped it.  No one at LaPorte told Mrs.
Rigby about previously finding money in her mother’s bed.

            On December 29, 1996, Mrs. Rigby visited her
mother around 8:00 in the
morning.  After about an hour, she walked
down the hall to get a cup of coffee.  As
she rounded the corner on her way back to the room, Mrs. Rigby heard her mother
say, “Oh, oh.”  Mrs. Rigby testified that
her mother sounded frightened.  Mrs.
Rigby ran to her mother’s room and discovered Jones on top of her mother.  Mrs. Rigby yelled for one of the nurses to
help her.  Annie Rivers, one of the
nurses, and Mrs. Rigby pulled Jones off of Mrs. Underwood.  Annie Rivers testified that when Jones was on
top of Mrs. Underwood, his penis was erect. 
After they pulled him off of her, his penis became flacid
and was hanging out of his pajamas.  Mrs.
Underwood’s gown had been pushed up around her neck, and she was wearing
nothing underneath the gown.  Jones was
subsequently discharged to Rusk State Hospital.

            Contrary to Greer’s testimony, Dr.
Rapp testified he fully informed Greer of Jones’s history at Anahuac and at San
 Jacinto.  Dr. Rapp
testified he did not use the term “model resident,” but told Greer there was a
long period of time in which Jones did not exhibit unusual behavior.  Dr. Rapp denied telling Greer that Jones’s
aberrant sexual behavior was a “one-time incident.”  Dr. Rapp encouraged Greer to call the
director of nursing at Anahuac and
inquire about Jones.  Dr. Rapp testified
he did not believe Jones was a safety risk when he entered LaPorte, nor was the
assault on Mrs. Underwood foreseeable.

            In its defense, LaPorte presented
the deposition testimony of Virginia Rigby. 
Mrs. Rigby testified that prior to her death, Mrs. Underwood was blind
for six months and had been deaf for two years. 
Mrs. Rigby testified that she did not seek a mental health professional
after her mother’s death.  The assault on
her mother caused Mrs. Rigby shock, but did not cause her any physical
pain.  Mrs. Rigby testified she suffered
no disruption in her daily routine.  On
the day of the assault, she did not know if her mother understood what was
happening.  Mrs. Rigby further testified
that, prior to the assault, her mother could communicate, either by squeezing
her hand, or by speaking.  After the
assault, Mrs. Underwood did not communicate in any manner.  Mrs. Rigby testified that she relived the
assault in her mind “about a million times.” 
She stated her mother changed for the worse and “just felt like
everything was over.”

            The jury found LaPorte and Dr. Rapp
were negligent and their negligence proximately caused harm to Mrs. Underwood
and Mrs. Rigby.  It further found that
the harm sustained by Mrs. Underwood and Mrs. Rigby resulted from malice
attributable to LaPorte and Dr. Rapp. 
The jury awarded Mrs. Rigby and Mrs. Underwood $2.5 million each in
actual damages and assessed $50 million punitive damages against LaPorte.  The trial court remitted actual damages to
$500,000 each and punitive damages to $10 million.

Punitive
Damages

            In its first issue, Healthcare
claims section 41.005 of the Texas Civil Practice and Remedies Code bars an
award of exemplary damages because Mrs. Rigby’s and Mrs. Underwood’s damages
were caused by the criminal act of a third party, Jones.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 41.005 (Vernon
1997).  Section 41.005, entitled “Harm
Resulting from Criminal Act,” provides:

(a)       In an action arising from harm resulting from an assault,
theft, or other criminal act, a court may not award exemplary damages against a
defendant because of the criminal act of another.

(b)       The exemption provided by Subsection (a) does not apply if:

            (1)       the
criminal act was committed by an employee of the defendant;

            (2)       the
defendant is criminally responsible as a party to the criminal act under the
provisions of Chapter 7, Penal Code;

            (3)       the
criminal act occurred at a location where, at the time of the criminal act, the
defendant was maintaining a common nuisance under the provisions of Chapter
125, Civil Practice and Remedies Code, and had not made reasonable attempts to
abate the nuisance; or

            (4)       the
criminal act resulted from the defendant’s intentional or knowing violation of
a statutory duty under Subchapter D, Chapter 92, Property Code, and the
criminal act occurred after the statutory deadline for compliance with that
duty.

(c)       In an action arising out of a criminal act committed by an
employee, the employer may be liable for punitive damages but only if:

            (1)       the
principal authorized the doing and the manner of the act;

            (2)       the
agent was unfit and the principal acted with malice in employing or retaining
him;

            (3)       the
agent was employed in a managerial capacity and was acting in the scope of
employment; or

            (4)       the
employer or a manager of the employer ratified or approved the act.

 

 

 

 class=Section2>

            Section 41.005(a) bans punitive
damages for the criminal conduct of another. 
It is undisputed that the direct cause of Mrs. Underwood’s harm was the
criminal conduct of another.  Rigby
argues that the court’s charge allowed the jury to award punitive damages
notwithstanding the concurrent criminal act of another.  We disagree with Rigby’s assertion for the
following reasons.  First, the injury to
Mrs. Underwood was indivisible.  We find
it highly improbable that the jury awarded $50 million in punitive damages
solely because of the criminal act of the nursing home, separate and apart from
any criminal act by Jones.  Second, in
her sixth amended petition, plaintiff admits that the harm resulted from a
criminal assault by Morris Jones.  The
trial court took judicial notice of the plaintiff’s sixth amended 

 class=Section3>

petition.  A judicial admission occurs when an assertion
of fact is conclusively established in live pleadings, making introduction of
other pleadings or evidence unnecessary. 
Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 767 (Tex.
1983).  A judicial admission not only
relieves an adversary from introducing proof of the fact admitted but also bars
the party from disputing it.  Gevinson v. Manhattan Constr.
Co. of Okla., 449
S.W.2d 458, 466 (Tex.
1969).  Once a fact is conclusively
established by judicial admission, jury questions concerning the fact need not
be submitted.  See Chilton Ins. Co. v. Pate & Pate Enters., Inc., 930 S.W.2d
877, 884–886 (Tex. App.—San Antonio 1996, writ denied).  After acknowledging plaintiff’s judicial
admission, we must determine whether Healthcare is exempt from liability for
punitive damages under the provisions of Tex.
Civ. & Rem. Code §
41.005.

            Rigby further argues section 41.005
does not apply because the statute silently, but impliedly, allows recovery of
punitive damages resulting from the defendant’s conduct.  We disagree with that assertion for the
following reasons.  First, our
legislature enumerated and described four exceptions to a defendant’s exemption
from punitive damages because of the criminal act of another.  See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.005(b).  In the instant case, there
was no evidence that (1) the assault was committed by an employee of the
defendant; (2) defendant (Healthcare) was criminally responsible as a party to
the criminal act of assault under the provisions of Chapter 7, Penal Code; (3)
the criminal act occurred at a location where, at the time, defendant was
maintaining a common nuisance; or (4) the criminal act resulted from the
defendant’s violation of a duty under Subchapter D, Chapter 92, Property
Code.  There are no other
exemptions.  The legislature did not
express that a defendant’s concurrent criminal act (without criminal
responsibility as a party under 41.005 (b)(2)) constitutes an exception to
statutory exemption from liability for punitive damages.  We cannot add or create another exception to statutory
exemption from punitive damages.  It is a
familiar rule of statutory construction that an exception makes plain the
intent that the 

 class=Section4>

statute
should apply in all cases not excepted.  State v. Richards, 157 Tex. 166, 301
S.W.2d 597, 600 (1957); Ins. Co. of N.
Am. v. Morris, 981 S.W. 2d 667,
681 (Tex. 1998). 

            In responding affirmatively to jury
question number six[1], the
jury concluded that the harm to plaintiffs resulted from “malice” of
Healthcare, by and through its “vice principal.”  The jury awarded $50,000,000 as exemplary
damages in response to question number eight.[2]  Assessment of damages in question number
eight was “for the conduct found in response to question number six.”  Question number six was posited such that the
jury could not distinguish between the criminal act of Jones and malice
attributed to Healthcare.  Appellee contends the jury assessed punitive damages
because of Healthcare’s malice, not because of the criminal act of
another.  In interpreting or applying
41.005 to any scenario, it seems implicit that our legislature anticipated a
jury might find a defendant acted with malice even though the harm to a
plaintiff was caused by the criminal act of another.  Because the plaintiff admitted her harm was
caused by the criminal conduct of Jones, she is barred from recovering
exemplary damages under section 41.005 despite the jury’s finding that
Healthcare acted with malice.  The
affirmative finding of malice against Healthcare does not supercede the effect
of appellant’s judicial admission that Mrs. Underwood’s harm was caused when
she was assaulted by Morris Jones.  See Chilton
Ins., 930 S.W. 2d at 884–886; Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W. 3d 887, 905 (Tex. 2000). 

            Appellee
requested and the court submitted jury question number nine[3], which
asked the jury to determine whether Healthcare’s actions constituted the
criminal act of injury to an elderly or disabled person.  See
Tex. Pen. Code Ann. § 22.04 (Vernon Supp.
2002).  We note that issue number nine
was not submitted with correct definitions and instructions for corporate
criminal responsibility, however, our interpretation of 41.005 renders this
defect moot.  We have concluded that the
legislature did not provide an exception to exemption from punitive damages
when a defendant commits a concurrent criminal act but is not responsible as a
party. See Tex. Civ.
Prac.
& Rem.
Code § 41.005 (b)(2) Vernon Supp.
2002.  

            Further, Section 41.005(b)(2) allows
recovery of punitive damages if the defendant is criminally responsible as a
party to the criminal act.  By
definition, if one can be responsible as a party, the act is a concurrent
act.  If we accept Rigby’s construction
of section 41.005, section (b)(2) would become a nullity.  We cannot glean any different application of
this statute under these facts because the physical and emotional injury to
plaintiffs was caused by an assault committed by another party.

            It is the duty of the court to
administer the law as it is written, and not to make law; and however harsh a
statute may seem to be, or whatever may seem to be its omission, courts cannot
. . . make it apply to cases to which it does not apply, without assuming
functions that pertain to the legislative department of the government.”  Turner
v. Cross, 83 Tex. 218, 224,
18 S.W. 578, 579 (1892).  We recognize
this is a case of first impression with regard to interpretation of section
41.005.  Finding no ambiguity in the
statute, we hold section 41.005 bars plaintiff’s recovery of punitive damages
notwithstanding the affirmative answers to jury questions numbered six and
nine.  Healthcare’s first issue is
sustained.

            Healthcare next contends the jury’s
finding of malice is not supported by sufficient evidence.  In its second and third issues, Healthcare
challenges the assessment and amount of punitive damages.  The jury finding that Healthcare Centers,
through its vice-principal, acted with malice could entitle the plaintiff to a
recovery of punitive damages.  See Mobil Oil Corp. v. Ellender,
968 S.W.2d 917, 921 (Tex. 1998) (holding that a corporation can be liable for
punitive damages if it commits gross negligence or malice through the actions
or inactions of a vice-principal). 
Because section 41.005 bars recovery of punitive damages despite the
jury finding of malice, we need not address the sufficiency of the evidence to
support the malice finding or the amount of punitive damages.  See Cf.
Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 31 (Tex. 1994) (When confronted with a challenge to the factual
sufficiency of evidence of an exemplary damages award, the court of appeals
must detail the relevant evidence in support of or against the award).

Bystander
Recovery

            In its fourth issue, Healthcare
first contends that Mrs. Rigby’s recovery for bystander injuries is precluded
by the Medical Liability Insurance Act.  See Tex.
Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp.
2002).  The MLIA was enacted to alleviate
a perceived medical malpractice insurance crisis by reforming health care
liability laws to ensure affordable health care by reducing medical malpractice
insurance rates.  See id. § 1.02(a)(5), (b). 
The act applies only to a cause of action against a health care provider
or physician for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, health care, or safety that proximately
results in injury to or death of the patient, whether the patient’s claim or
cause of action sounds in tort or contract. 
Id. §
1.03(a)(4).  The definition of health
care provider includes a nursing home.  Id. §
1.03(a)(3).

            In holding that a bystander could
not recover in a medical malpractice case, the Supreme Court stated:

The very nature of medical
treatment is often traumatic to the layperson. 
Even when a medical procedure proves to be beneficial to the patient, it
may shock the senses of the ordinary bystander who witnesses it.  A bystander may not be able to distinguish
between medical treatment that helps the patient and conduct that is harmful.  A physician’s primary duty is to the patient,
not to the patient’s relatives.  Guided
by these policy concerns, we hold that Texas’[s] bystander cause of
action precludes bystander recovery in medical malpractice cases.

 

Edinburg Hosp. Auth. v. Trevino, 941 S.W.2d 76, 81 (Tex.
1997).  The event that Mrs. Rigby witnessed
was not a medical procedure being administered by a member of LaPorte’s staff. 
Therefore, this is not the type of case the court contemplated when it
precluded bystander recovery under the MLIA. 
See generally art. 4590i.  

            Healthcare contends the plaintiff’s
suit for LaPorte’s failure to protect Mrs. Underwood
from Mr. Jones amounts to a “claimed departure from accepted standards of . . .
safety,” and is within the definition of medical malpractice.  The word “safety,” however, cannot be read in
isolation, and the phrase “accepted standard of . . . safety” must be read in
context to mean “accepted standard of safety within the health care
industry.”  See Rogers v. Crossroads Nursing Serv.,
Inc., 13 S.W.3d 417, 418–19 (Tex. App.—Corpus Christi 1999, no
pet.).  Because the issue of protecting
Mrs. Underwood from Mr. Jones is not governed by an accepted standard of safety
within the health care industry, but rather is governed by the standard of
ordinary care, the plaintiff’s cause of action is one of simple negligence not
governed by article 4590i.  In this case,
Mrs. Rigby sued Healthcare and others for simple negligence in failing to take
adequate safety measures to protect its residents from a known sexual deviant.  Therefore, article 4590i does not preclude
Mrs. Rigby’s bystander damages.  See Sisters of Charity of Incarnate Word v. Gobert, 992 S.W.2d 25, 28 (Tex. App.—Houston [1st
Dist.] 1997, no pet) (holding that cause of action was one of ordinary
negligence rather than malpractice where plaintiff was sexually assaulted by
another patient).

            Healthcare next contends that Mrs.
Rigby cannot recover bystander damages because Mrs. Underwood did not suffer
“serious bodily injury.”  A bystander who
witnesses a negligently inflicted serious or fatal injury may recover for
mental anguish if (1) the bystander was located near the scene of the accident
as contrasted with one who was a distance away from it; (2) the shock resulted
from a direct emotional impact upon the bystander from the sensory and contemporaneous
observance of the accident, as contrasted with learning of the accident from
others after its occurrence; and (3) the bystander and the victim were closely
related, as contrasted with an absence of any relationship or the presence of
only a distant relationship.  Hermann Hosp. v. Martinez, 990 S.W.2d
476, 478 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Healthcare does not challenge the fact that
Mrs. Rigby was located near the scene of the assault, that she experienced
shock as a direct result of contemporaneous observance of the assault, or that
Mrs. Rigby and Mrs. Underwood were closely related.  Healthcare claims that Mrs. Rigby cannot
recover because her mother did not suffer serious bodily injury from the
attempted sexual assault.  Healthcare
dwells on the fact that Mrs. Underwood was not physically injured.  Physical injury, however, is not required for
bystander recovery. 

            Healthcare argues that “[m]ost bystander cases involve contemporaneous perception by a
close relative of injuries resulting in death, serious bodily injuries . . . or
other permanently disabling injury.” 
Healthcare does not cite and we have not found a case where the court
required physical injury by the complainant prerequisite to recovery to recover
mental anguish damages.  In recognizing a
bystander cause of action, the Supreme Court has found, “Before a bystander may
recover, he or she must establish that the defendant has negligently inflicted
serious or fatal injuries on the primary victim.”  Boyles
v. Kerr, 855 S.W.2d 593, 598 (Tex.
1993).  The Supreme Court has not
recognized a requirement of physical injury.

            In determining whether Mrs.
Underwood suffered serious injury, we review the events Mrs. Rigby
witnessed.  Those events were of such a
shocking and disturbing nature that mental anguish was a highly foreseeable
result.  As previously noted, after
hearing her mother yell from down the hall, Mrs. Rigby witnessed Jones lying on
top of her mother with her mother’s clothing pulled up around her neck.  Mrs. Rigby was forced to, with the help of a
nurse, physically pull Jones off of her mother. 
Jones, when pulled off of Mrs. Underwood, stated, “You didn’t let me get
a chance to put it in yet.”  The very
occurrence of this event establishes the emotional pain, torment, and suffering
which were submitted to the jury.  See Fort Worth Cab & Baggage Co. v.
Salinas, 735 S.W.2d 303, 305 (Tex. App.—Fort Worth 1987, no writ) (stating
that although mother did not suffer physical injury from sexual assault,
children who witnessed assault could recover mental anguish damages as
bystanders).  Therefore, Mrs. Rigby is
entitled to recover damages as a bystander. 


Recovery
for Pain and Mental Anguish

            Healthcare next contends that Mrs.
Underwood could not recover for physical pain and mental anguish because she
could not cognitively experience it. 
Healthcare contends there is no evidence that Mrs. Underwood was aware
of Jones’s attack or that she could mentally contemplate any harm to herself
resulting from Jones’s conduct.  Healthcare
argues that because Mrs. Underwood did not cry, yell, scream, or thrash about
that she must not have been aware of what was happening to her.  To the contrary, several witnesses testified
to Mrs. Underwood’s demeanor before and after Jones’s assault.  The nurses testified that, prior to the
assault, Mrs. Underwood could make moaning sounds and that she realized someone
was touching her.  They also testified
that after the attempted assault, she did not respond well and they could tell
something was wrong with her.  Louis
Underwood, Mrs. Underwood’s son, testified that shortly before Christmas, his
mother appeared frightened.  He said she
seemed to want to tell him something, but was unable to express her
thoughts.  After the assault, Mr.
Underwood testified that his mother seemed to give up on life.  Mrs. Rigby was alerted to the attack by her
mother shouting, “Oh, oh” so loudly she could hear her from down the hall.  The fact that Mrs. Underwood responded to the
assault by crying out is evidence that she was aware of what was happening to
her.  The evidence is sufficient to find
that Mrs. Underwood suffered conscious physical and emotional pain as a result
of the attempted sexual assault.

            Healthcare next contends that
neither Mrs. Rigby nor Mrs. Underwood satisfied the rigorous standards required
for recovery of mental anguish damages. 
When the elements of damages considered by the jury include the more
amorphous, discretionary damages, such as mental anguish and pain and
suffering, the determination of the amount of damages will generally be left to
the discretion of the jury.  See Texarkana Mem’l Hosp., Inc. v.
Murdock, 946 S.W.2d 836, 841 (Tex.
1997).  The determination of the amount
of money that will compensate the plaintiff for pain and mental anguish
involves a consideration of elements for which no mathematical standard exists
except what an impartial jury may deem adequate.  Dico Tire, Inc. v.
Cisneros, 953 S.W.2d 776, 792 (Tex. App.—Corpus Christi 1997, writ
denied).  Unless the award is so large as
to indicate that it was influenced by passion, prejudice, or other improper
motive, the jury verdict will not be set aside. 
Id.  Therefore, the question of damages, if not
excessive, is properly left for the jury to determine.  Owens-Corning
Fiberglass Corp. v. Martin, 942 S.W.2d 712, 719 (Tex. App.—Dallas 1997, no
writ).  A jury’s discretion in
compensation for mental anguish is limited to that which causes a “substantial
disruption in the plaintiff’s daily routine, or a high degree of mental pain
and distress.”  Saenz v. Fid. & Guar. Ins., 925 S.W.2d 607, 614 (Tex. 1996).

            The standard of review for an
excessive damages complaint is factual sufficiency of the evidence.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex.
1998).  We employ the same test for
determining excessive damages as for any factual sufficiency question.  See
Pope v. Moore, 711
S.W.2d 622, 624 (Tex.
1986).  We review the evidence, keeping
in mind it is the jury’s role, not ours, to judge the credibility of the
evidence, to assign the weight to be given to testimony, and to resolve
inconsistencies within or conflicts among the witnesses’ testimony.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

            In this case, the trial judge
reviewed the evidence in support of both actual and exemplary damages.  As noted earlier, the judge found factually
insufficient evidence to support the amount of the damages and ordered a remittitur.  To
sustain appellant’s challenge to the trial judge’s damage award, we would have
to conclude the evidence supporting the finding is so weak as to indicate it is
clearly wrong and unjust.  See id. 
Healthcare argues that Mrs. Rigby’s daily routine was not altered;
therefore, she cannot recover mental anguish damages.  Disruption in the plaintiff’s daily routine
is not the only element to be considered. 
The jury was also entitled to consider whether the event caused Mrs.
Rigby a high degree of mental pain and distress.  The evidence shows that when Mrs. Rigby
observed the attempted sexual assault on her mother, she was scared, angry,
crying, shaking, and afraid “he might do it again.”  Mrs. Rigby and her son testified that Mrs.
Rigby passes LaPorte every day and for several weeks after the assault, every
time she passed LaPorte, Mrs. Rigby relived the assault and cried.  Mrs. Rigby testified this event was the most
traumatic event of her life.  She also
testified she still has nightmares about the assault.  With regard to Mrs. Underwood’s mental pain
and anguish, her daughter, son, grandson, and caretakers testified Mrs.
Underwood’s demeanor was dramatically changed after the assault.  Because the evidence is sufficient to support
the damages award as remitted, we overrule Healthcare’s fourth issue.

Remittitur

            Mrs. Rigby attempts to file a
cross-point alleging the remittitur was
improper.  She contends the amount
awarded in the original judgment prior to the remittitur
should stand.  Texas Rule of Appellate
Procedure 46.2 allows the remitting party to contend that all or part of the remittitur should not have been required, but the remitting
party must perfect an appeal to raise that point.  Tex.
R. App. P. 46.2.  Rule 26.1(d) of
the Texas Rules of Appellate Procedure provides that if any party files a
notice of appeal, another party may file a notice of appeal within the appealable period stated in Rule 26.1(a) or fourteen days
after the first filed notice of appeal, whichever is later.  Tex.
R. App. P. 26.1(a), (d).  Judgment
was signed in the trial court on January
 31, 2000.  LaPorte filed
its notice of appeal on June 30,
 2000.  Therefore, Mrs.
Rigby’s notice of appeal was due July 14,
 2000.  Mrs. Rigby filed a
motion to extend time to file notice of appeal on August 31, 2000, which this court
denied.  Because we do not have a timely
perfected appeal from Mrs. Rigby, we cannot consider her cross-point
challenging the remittitur.  Prior to submission of this appeal,
Healthcare filed a motion to strike Mrs. Rigby’s cross-point.  That motion is granted.

Proximate
Cause

            In its fifth issue, Healthcare
claims the evidence is legally and factually insufficient to support the jury’s
finding of proximate cause.  In reviewing
a legal sufficiency challenge, we consider all the evidence in the light most
favorable to the verdict and indulge every reasonable inference deducible from
the evidence in the prevailing party’s favor. 
Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  In reviewing a factual
sufficiency challenge, we consider all the evidence both supporting and
contrary to the jury’s finding.  Plas-Tex., Inc. v. U. S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). 

            Proximate cause consists of both
cause in fact and foreseeability.  Travis
v. City of Mesquite, 830
S.W.2d 94, 98 (Tex.
1992).  Cause in fact means that the
defendant’s act or omission was a substantial factor in bringing about the
injury, which would not otherwise have occurred.  Prudential
Ins. Co. v. Jefferson Assocs., 896 S.W.2d 156, 161 (Tex.
1995).  At some point in the causal
chain, the defendant’s conduct may be too remotely connected with the
plaintiff’s injury to constitute legal causation.  Springall v.
Fredericksburg Hosp. & Clinic, 225 S.W.2d 232, 235 (Tex. Civ. App.—San Antonio 1949, no writ).  

The law does not hold one legally responsible for the remote results of
his wrongful acts and therefore a line must be drawn between immediate and
remote causes.  The doctrine of proximate
cause is employed to determine and fix this line and is the result of an effort
by the courts to avoid, as far as possible the metaphysical and philosophical
niceties in the age-old discussion of causation, and to lay down a rule of
general application which will, as nearly as may be done by a general rule,
apply a practical test, the test of common experience, to human conduct when
determining legal rights and legal liability. 


Id.

            To be a legal cause of another’s
harm, it is not enough that the harm would not have occurred had the actor not
been negligent, the negligence must also be a substantial factor in bringing
about the plaintiff’s harm.  Union Pump Co. v. Allbritton,
898 S.W.2d 773, 775 (Tex.
1995).  The word “substantial” is used to
denote the fact that the defendant’s conduct has such an effect in producing
the harm as to lead reasonable people to regard it as a cause, in which there lurks
the idea of responsibility, rather than in the so-called “philosophic sense,”
which includes every one of the great number of events without which any
happening would not have occurred.  Lear Siegler, Inc.
v. Perez, 819 S.W.2d 470, 472 (Tex. 1991).

            The Supreme Court considered the
parameters of legal causation in Bell v.
Campbell, 434 S.W.2d 117 (Tex.
1968).  In Bell, two cars
collided, and a trailer attached to one of them disengaged and overturned in
the opposite lane.  A number of people
gathered, and three of them were attempting to move the trailer when they were
struck by another vehicle.  Id. at
119.  The court held that the parties
involved in the first accident did not proximately cause plaintiffs’ injuries,
reasoning: 

All acts and omissions charged against respondents had run their course
and were complete.  Their negligence did
not actively contribute in any way to the injuries involved in this suit.  It simply created a condition which attracted
[the plaintiffs] to the scene, where they were injured by a third party.

Id. at 122.

            Healthcare, citing Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472 (Tex. 1995), contends
the harm suffered by Mrs. Underwood and Mrs. Rigby was not proximately caused
by its negligence in failing to protect Mrs. Underwood from Jones.  In Doe,
a volunteer working for the Boys Club sexually molested three boys who were
members of the Boys Club.  Id. at
475.  The boys then sued the Boys Club,
claiming the failure to investigate its volunteers proximately caused the boys’
damages.  Id. at
476.  In Doe, the volunteer was performing community service as part of a
sentence for a conviction of driving while intoxicated.  Id. at 475.
The volunteer also had one other DWI conviction.  Id.  The court held the prior DWI convictions did
not indicate criminal conduct in any way akin to sexual assault of young
boys.  Id. at 478. 
Therefore, if the Boys Club had investigated the volunteer, its
investigation would not have caused the club to reasonably anticipate his
subsequent sexual assaults of the boys.  Id.  

            In this case, Healthcare’s
negligence was both foreseeable and the cause in fact of Mrs. Underwood’s and
Mrs. Rigby’s damages.  Almost every
witness testified that it was foreseeable that Jones could harm one of the elderly
female residents.  Jones’s history at Anahuac, San
 Jacinto Hospital, and
LaPorte indicated he displayed sexually deviant behavior and posed a threat to
elderly disabled residents.  Further,
Healthcare’s negligence was a substantial factor in bringing about the harm to
Mrs. Underwood and Mrs. Rigby. 
Healthcare argues that it simply created a condition that made the
assault possible; therefore, the causal link is too attenuated to show cause in
fact.  This is not a case, however, where all forces involved in the
original act of negligence had come to rest. 
Nor is this a case, such as Doe,
in which the defendant could not have known the propensity of the actor had it
investigated him.  Here, Jones’s prior
conduct was indicative of his future conduct and the original act of
Healthcare’s negligence had not come to rest before the assault on Mrs.
Underwood.  Considering the evidence in
the light most favorable to the verdict, we find the evidence is legally
sufficient to show Healthcare’s negligence was a substantial factor in bringing
about the injury.  After considering all
the evidence both in support of and contrary to the jury’s finding of proximate
cause, we find the evidence is not so weak that the finding is clearly wrong
and manifestly unjust. 

            Healthcare further contends the
jury’s apportionment of eighty percent causation to Healthcare and twenty
percent causation to Dr. Rapp is not supported by factually sufficient
evidence.  Because we have discussed the evidence
supporting the jury’s finding of proximate cause and found the evidence
sufficient, we need not repeat that discussion here.  There is also evidence that Dr. Rapp, who
knew Jones’s history at Anahuac and at San
 Jacinto, but still recommended his admission to LaPorte, was
at fault.  Even if a different percentage
allocation could be supported by the evidence, an appellate court may not
substitute its judgment for that of the jury. 
Humble Nat’l Bank v. DCV, Inc.,
933 S.W.2d 224, 235 (Tex. App.—Houston [14th Dist.] 1996, writ denied).  Having found sufficient evidence that both
Healthcare and Dr. Rapp were at fault, we find no basis for interfering with
the jury’s apportionment of negligence. 
Accordingly, we overrule issue five.

            In its sixth issue, Healthcare
contends it is entitled to a new trial in the interests of fairness and
justice.  Texas Rule of Appellate
Procedure 43.3 states:

When reversing a trial court’s judgment, the court must render the
judgment that the trial court should have rendered, except when:

 

(a)                   a remand is necessary for further proceedings; or

(b)                   the interests of justice require a remand for
another trial.

Tex.
R. App. P. 43.3.

 

Appellate
courts have remanded to the trial court in the interest of justice when the
applicable law has changed between the time of trial and the disposition of the
appeal, precedent has been overruled, or to allow a party to amend
pleadings.  See, e.g., In re Doe, 19
S.W.3d 278, 290 (Tex. 2000); Boyles v. Kerr, 855 S.W.2d 593, 603 (Tex. 1993); Twyman v. Twyman,
855 S.W.2d 619, 626 (Tex. 1993); Westgate, Ltd. v. State, 843 S.W.2d 448,
455 (Tex. 1992); L.M.B. Corp. v. Gurecky,
501 S.W.2d 300, 303 (Tex.
1973).  In this case we are not presented
with any of those exceptions.  We have
found sufficient evidence to support the plaintiff’s cause of action for
negligence and actual damages as remitted. 
We have further found that the harm sustained by plaintiff was
proximately caused by the criminal act of Morris Jones.  Therefore, punitive damages are not
recoverable under section 41.005 of the Civil Practice and Remedies Code.  There are no remaining issues requiring
remand.  Healthcare’s sixth issue is
overruled.

            The judgment of the trial court is
modified to delete assessment of punitive damages.  As modified, the judgment of the trial court
is affirmed.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and Corrected Opinion and
Concurring Opinions filed December 12, 2002.

 

Panel consists of Chief Justice Brister and Justices
Fowler and Seymore.  (Brister, C.J. and
Fowler, J. concurring.)

 

Publish — Tex.
R. App. P. 47.3(b).

 

 




Motion for Rehearing Overruled and Opinion of March 7, 2002 Withdrawn;
Affirmed as Modified and Corrected Opinion and Concurring Opinions filed
December 12, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-00-00790-CV

____________

 

HEALTHCARE
CENTERS OF TEXAS, INC., D/B/A/ THE LAPORTE

HEALTHCARE CENTER, Appellant

 

V.

 

VIRGINIA
MARTINE RIGBY, INDIVIDUALLY, AND AS ADMINISTRATRIX

OF THE ESTATE
OF JEWELL UNDERWOOD, DECEASED, Appellee

 

________________________________________________________________________

 

On Appeal from
the Probate Court Number Two

Harris County, Texas

Trial Court
Cause No. 296,896-401

________________________________________________________________________

 

C O N C U R
R I N G   O P I
N I O N

            I concur in the Court’s judgment,
but write separately as to two points. 
First, I disagree that Virginia Rigby judicially admitted that all harm
resulted from the acts of Morris Jones and
him alone.  A judicial admission must
be clear, deliberate, and unequivocal.  See Regency Advantage Ltd. Partnership v.
Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex.
1996).  Rigby admitted in her sixth
amended petition that Jones committed an assault, but also alleged that various
common law and statutory violations by Healthcare Centers of Texas, Inc.
allowed him to do so.  The allegation
that Jones committed the assault is not an unequivocal admission that no one
else played a part.

            Nevertheless, I agree with the Court
that Texas law
prohibits Rigby from recovering any punitive damages from Healthcare.  In 1995, the Legislature passed a statute
prohibiting recovery of such damages from a defendant “because of the criminal
act of another.”  See Tex. Civ.
Prac. & Rem. Code §
41.005(a).  No one disputes that Jones
committed a criminal act.

            Pointing to the jury charge and the
judgment, Rigby asserts her award was for the criminal acts of Healthcare, not the criminal acts of another. 
Her able counsel have provided us with statements by a sponsor of the
statute and a lobbyist suggesting they did not read the statute to apply to
concurrent criminal acts (that is, when there are criminal acts by both the
defendant and another).  Such statements
do not constitute legislative history.  See General Chemical Corp. v. De La Lastra, 852 S.W.2d 916, 923 (Tex.
1993).  Nor can they justify rewriting
the statute.  See Texas Dept. of Public Safety v. Kreipe,
29 S.W.3d 334, 338 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied). 

            The second section of this statute
contains several exceptions, one of which allows punitive damages if “the
defendant is criminally responsible as a party to the criminal act” of
another.  See Tex. Civ.
Prac. & Rem. Code §
41.005(b)(2).  In other words, punitive
damages are expressly allowed against an accomplice.[4] But an
accomplice is guilty of his own crime.  See Tex.
Pen. Code  § 7.01.  If Rigby’s interpretation is correct, this
exception is completely superfluous—accomplices have committed their own
concurrent crime, and would never be covered by a statute applying to
defendants sued for the criminal act of another.  We must construe this statute as a whole,
giving each provision effect.  Tex. Gov’t Code
§ 311.021(2); Helena Chemical Co. v.
Wilkins, 47 S.W.3d 486, 493 (Tex.
2001).  By creating an express exception
for concurrent acts by accomplices, the Legislature obviously did not share
Rigby’s interpretation that the statute had no application to concurrent
criminal acts at all.

            Finally, a note of caution should
accompany the Court’s affirmation of bystander damages for Virginia Rigby.  Bystander recovery is a species of negligent
infliction of emotional distress, an action generally not recognized in Texas.  See
Boyles v. Kerr, 855 S.W.2d 593, 595-96 (Tex. 1993)
(holding mental anguish damages compensable only in connection with a breach of
some other duty imposed by law).  It is
not available in medical malpractice cases. 
See Edinburg Hosp. Authority v. Trevino, 941
S.W.2d 76, 81 (Tex.
1997).  I agree with the Court this is
not a medical malpractice case, as the propriety of failing to supervise a
sexual deviant in a nursing home is within the common knowledge of laymen.  See
Golden Villa Nursing Home, Inc. v. Smith, 674 S.W.2d 343, 349 (Tex.
App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.) (holding propriety of failing to supervise patient
who wandered off from nursing home did not require expert testimony).  But it is not at all clear that bystander
recovery should be extended to a fact situation like this one.

            Bystander damages can be recovered
by a family member who is located near the scene of and directly perceives an
accident.  Boyles, 855 S.W.2d at 598. 
But as the use of the word “accident” implies, bystander recovery has
been allowed in Texas almost
exclusively in auto accident cases.  It
is one thing to expect a driver to know that running over a person may cause
severe shock to family members standing by; it is quite another to expect a
nursing home administrator to know that admitting a sexual deviant may cause
severe shock to family members who stand by while he commits deviant acts upon
their loved ones.  

            Nevertheless, Healthcare’s appeal
includes no argument that a bystander cause of action does not exist in this
situation.  Thus, it has waived any
error.  See Tex. R. App. P. 38.1.  

 

                                                                        /s/        Scott Brister

                                                                                    Chief
Justice

 




Judgment rendered and Corrected Opinion and
Concurring Opinions filed December 12, 2002.

 

Panel
consists of Chief Justice Brister and Justices Fowler and Seymore.

Publish — Tex. 
R.  App.  P.  47.3(b).

 




Motion for
Rehearing Overruled and Opinion of March 7, 2002 Withdrawn; Affirmed as
Modified and Corrected Opinion and Concurring Opinions filed December 12, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-00-00790-CV

____________

 

HEALTHCARE
CENTERS OF TEXAS, INC. D/B/A THE LAPORTE

HEALTHCARE CENTER, Appellant

 

V.

 

VIRGINIA
MARTINE RIGBY, INDIVIDUALLY AND AS ADMINISTRATRIX

OF THE ESTATE
OF JEWELL UNDERWOOD, DECEASED, Appellee

 

________________________________________________________________________

 

On Appeal from
the Probate Court Number Two

Harris County, Texas

Trial Court
Cause No. 296,896-401

________________________________________________________________________

 

C O N C U R
R I N G   O P I
N I O N

            I join in
all of the majority’s opinion except for its discussion of the punitive damages
issues.  On that issue, I concur in the
result.

            The majority opinion has set forth
the facts of the case and the issues, so I will not revisit them.  I do, however, want to address one aspect of
the case that I believe was not fully explored by either of the
parties.  This is a new section of the
civil practice and remedies code, and, as the majority expresses, no case law
exists on the applicability of the section to this fact situation.  

            One problem with this case is, and
always has been, that the parties avoided discussing the main statutory issue
in the case:  when a corporation is sued
for its own alleged criminal act but a criminal act of a third party is also
responsible for the injuries sued upon, does section 41.00(a) of the Civil
Practice and Remedies Code bar exemplary damages?  LaPorte has always said simply that Rigby was
suing for Morris’s sexual assault of her elderly mother and, therefore, section
41.005(a) bars exemplary damages.  Rigby
has always responded that she is suing, not for Morris’s sexual assault, but
for LaPorte’s commission of injury to an elderly
individual, see Tex. Pen. Code Ann. § 22.04 (Vernon
Supp. 2002); because that is a separate crime that LaPorte committed, section
41.005(a) does not apply.  Both are
right—at least partly so.  LaPorte is
right that Rigby is suing for the harm that resulted from Morris’s sexual
assault of Rigby’s mother, and Rigby is right that she is suing for LaPorte’s alleged commission of injury to an elderly
individual.  But, neither LaPorte nor
Rigby explained in any detail why the other’s argument was faulty.[5]  That left us to grapple with the issue
ourselves.  And, what the majority
opinion concludes—I think rightly—is that 41.005(a) does apply.  What I want to do in this concurrence is
discuss in more detail the reasons for that conclusion and its ramifications.

            The first paragraph of the statute
provides the following:

(a)       In
an action arising from harm resulting
from an assault . . . or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another.

 

Tex. Civ. Prac. & Rem. Code Ann. § 41.005 (Vernon
1997).  This paragraph is broadly
written, and it appears to apply to this case. 


 class=Section5>

            First, clearly, this action arose
from, and was brought because of, Morris’s sexual assault of Rigby’s
mother.  If the sexual assault had not
happened, there would not have been a suit. 
Or, if there had been a suit, it would have to be because Rigby’s mother
was injured in some other way on account of LaPorte’s
failure to act.  

            Second, it is impossible to look at
this case and say that the jury assessed $50 million in damages against LaPorte
and never gave a second thought to Morris’s criminal act.  Yes, the jury question asked the jury to
assess damages based on LaPorte’s criminal act, but
that act has no significance by itself. 
It can be viewed only in the context of what it failed to prevent:  Morris’s rape of a fellow resident of the
nursing home.  Consequently, for purposes
of damages—for any purpose really—the two acts are so intertwined that one
cannot be considered without the other. 
In such a case, the jury’s award had to be based, at least in part, on
the criminal act of another.  This is
what the statute bars.

            According to Rigby’s counsel, this
means that any time a third party commits a criminal act, all joint tortfeasors are automatically immune from exemplary
damages.  They would have us read
paragraph (a) to provide that a court may not award exemplary damages against
anyone solely because of the criminal
act of another.  Thus, they want us to
conclude that if the corporation was partly responsible (and committed a
criminal act) and the third party was partly responsible, a plaintiff could
obtain punitive damages.  However,
paragraph (a) does not contain this limitation. 
A look at the four situations contained in paragraph (b)—for which a
plaintiff can obtain punitive damages against a corporation—helps clarify the
issue.

            Paragraph (b) provides that in the
following situations, a defendant will be liable for exemplary damages in spite
of paragraph (a)’s broad proscription against exemplary damages:  (1) when an employee of the corporation commits
the act; (2) when the corporation itself is criminally responsible as a party[6] to
the act; (3) when the criminal act occurs at a place qualifying as a common
nuisance (a place people habitually go for prostitution, gambling, to shoot
firearms, to engage in organized crime, or to sell, possess, manufacture or use
controlled substances); and (4) when a landlord intentionally or knowingly
fails to comply with the Property Code’s requirements to provide certain
security devices for tenants.  

            For two reasons, I believe this
subsection answers Rigby’s claim.  First,
in reading the whole section, we are to assume that the legislature did not
commit a vain act—that it listed these situations in paragraph (b) because it
thought they were covered by paragraph (a)’s language, and it wanted a
plaintiff to be able to obtain punitive damages in these situations.  See Meritor Auto., Inc. v. Ruan
Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001)
(holding a court should examine the entire statute to determine its meaning); Cayan v. Cayan, 38
S.W.3d 161, 165–66 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied) (stating that the court does not “lightly presume
that the Legislation did a useless act”). 
We can reasonably assume, then, the legislature listed in paragraph (b)
every situation for which it thought a plaintiff should be able—at least
potentially—to obtain punitive damages. 
Second, a common theme—similar to this case—exists in three of these
situations:  they each involve a criminal
act by a third party in conjunction with a grossly negligent or intentional act
by a corporation, so that the criminal act likely would not have occurred
without the simultaneous “bad” act of the corporation.  For example, if the corporate employer had
not hired the employee, the rape would not have occurred; if the corporate
landlord had put latches on the windows of its apartments, the assault would
not have occurred; if the corporation had not operated an illegal gambling
operation, the murder would not have occurred. 
In these situations—like here—the acts are so intertwined, it is
impossible to consider one without the other and one could not have occurred
without the other.  

            If the situations enumerated in
paragraph (b) would otherwise fall within paragraph (a), so would this one; if
the legislature believed—as it apparently did—that these situations were
covered by paragraph (a)’s bar on exemplary damages, so is this one.   

            In short, in spite of the horrid
events of this case, we cannot ignore the plain language of the statute.  That language states that a corporation is
not liable for exemplary damages because of the criminal act of another.  Here, LaPorte was subjected to exemplary
damages in part, if not primarily, because of the criminal act of another.  For that reason, the damages are barred.[7]

 

                                                                        /s/        Wanda McKee Fowler

                                                                                    Justice

 




Judgment
rendered and Corrected Opinion and Concurring Opinions filed December 12, 2002.

 

Panel
consists of Chief Justice Brister and Justices Fowler and Seymore.

Publish
— Tex. R. App. P. 47.3(b).

 











                [1]  Do you find by clear and convincing evidence that
the harm to Jewell Underwood or Virginia Rigby Patterson resulted from malice
of Defendant Healthcare Centers of Texas, Ins. D/b/a the La Porte Healthcare Center?

            “Clear and convincing evidence”
means the measure or degree of proof that produces a firm belief or conviction
of the truth of the allegations sought to be established.  

            “Malice” means:

            (a)        a
specific intent by Healthcare Centers of Texas, Inc. d/b/a The La Porte
Healthcare Center to cause substantial injury to Jewell Underwood or Virginia
Rigby Patterson; or

            (b)        an
act or omission by Healthcare Centers of Texas, Inc. d/b/a The La Porte
Healthcare Center 

                        (I)        which, when viewed objectively from the
standpoint of Healthcare Centers of Texas, Inc. d/b/a The La Porte Healthcare
Center at the time of its occurrence, involved an extreme degree of risk,
considering the probability and magnitude of the potential harm of others; and

                        (ii)        of which Healthcare Centers of Texas,
Inc. d/b/a The La Porte Healthcare Center had actual, subjective awareness of
the risk involved, but nevertheless proceeded with conscious indifference to
the rights, safety, or welfare of others. 


            You are instructed that in order for
Healthcare Centers of Texas, Inc. d/b/a The La Porte Healthcare Center to have
acted with malice, you must find such specific intent or such act or omission
was committed by a vice principal of Healthcare Centers of Texas, Inc. d/b/a
The La Porte Healthcare Center .

            A “vice principal” of a corporation is a person who has
the authority to hire, discharge, and direct employees of the corporation or
who has the authority to manage the entire corporation or a department or
division of its business.

 

[To which the jury answered,
“yes”.]





                [2]  What sum of money, if any, should be assessed
against Defendant Healthcare Centers of Texas, Inc. d/b/a The La Porte
Healthcare Center and awarded to the Estate of Jewell Underwood and Virginia
Rigby Patterson as exemplary damages for the conduct found in response to
Question No. 6?

            “Exemplary damages” means any
damages awarded as a penalty or by way of punishment .  Exemplary damages include punitive
damages.  

            In determining the amount of exemplary damages you should
consider evidence, if any, relating to:

            a.         The
nature of the wrong.

            b.         The character
of the conduct involved.

            c.         The
degree of culpability of the wrongdoer.

            d.         The
situation and sensibilities of the parties concerned.

            e.         The
extent to which such conduct offends a public sense of justice and propriety.

            Answer in dollars and cents, if any.

 

            [To which the jury answered “$50 mil”.]





                [3]  Do you find that the conduct you have found to be
malice was a knowing injury to an elderly or disabled individual?

            A person acts knowingly, or with knowledge, with respect
to a result of his conduct when he is aware that his conduct is reasonably
certain to cause the result.  

            A person commits knowing injury to an elderly or disabled
individual if he knowingly by act, or knowingly by omission, causes to an
elderly or disabled individual:

                        A.        serious
bodily injury;

                        B.         serious
mental deficiency, impairment, or injury; or 

                        C.         bodily
injury.

            An omission that causes a condition described by (1)
through (3) above is injury to an elderly or disabled individual if:

            1.         the actor
has a legal or statutory duty to act; or

            2.         the actor
has assumed care, custody, or control of an elderly or disabled individual.

                        “Bodily injury” means physical pain, illness,
or any impairment or physical condition.

                        “Serious bodily injury” means bodily injury
that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ.

            Answer “Yes” or “No” for each of the following:

            Healthcare Centers of Texas, Inc. d/b/a The La Porte Healthcare Center 

            Dr. Keith Rapp

 

[To which the jury answered
“yes” for both.]  





                [4]  No one argues Healthcare was an
accomplice to Jones’s assault. 





                [5]  Rigby did address the issue in her
motion for rehearing but LaPorte has still never addressed the problem
head-on.  





                [6]  The Penal Code defines criminal
responsibility for the conduct of another in the following way: 

 

(a)  A person is criminally
responsible for an offense committed by the conduct of another if:

 

(1)  acting with the kind of culpability
required for the offense, he causes or aids an innocent or nonresponsible
person to engage in conduct prohibited by the definition of the offense; 

 

(2)  acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense; or

 

(3)  having a legal duty to
prevent commission of the offense and acting with intent to promote or assist
its commission, he fails to make a reasonable effort to prevent commission of
the offense.

            Tex. Pen. Code Ann. § 7.02. 

 





                [7]  It may very well be that the
Legislature did not include this situation only because it did not think of it
when it was drafting the section.  But,
we have to apply what the legislature actually included in the legislation, not
what it might have included if it had been able to contemplate the situation.